**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff,**

           **v.**              **CRIMINAL NO.** 10-232 (FAB)

JUAN BRAVO-FERNANDEZ and
HECTOR MARTINEZ-MALDONADO,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

On June 22, 2010, a grand jury returned an indictment against defendants Hector Javier Martinez-Maldonado ("Martinez") and Juan Bravo-Fernandez ("Bravo") (collectively "defendants"). The indictment charges both defendant Martinez and defendant Bravo with conspiracy, interstate travel in aid of racketeering, and bribery concerning programs receiving federal funds. The indictment also charges defendant Martinez with obstruction of justice.

**PROCEDURAL HISTORY**

On September 17, 2010, the defendants filed eleven motions to dismiss before this Court. Both defendants moved to dismiss Counts 1-5 of the indictment based on the statute of limitations. (Docket No. 55, "Motion to Dismiss No. 1"). Both defendants moved to dismiss the indictment alleging that the grand jury was

improperly charged, rushed to judgment and denied the opportunity to investigate thoroughly in violation of defendants' Fifth Amendment rights.  (Docket No. 68, "Motion to Dismiss No. 2"). Defendant Martinez moved to request a Kastigar-like hearing[1] to dismiss the indictment or suppress evidence due to the Government's alleged intrusion into the attorney-client relationship between Martinez and the attorneys who work in his Senate office.  (Docket No. 70, "Martinez's Motion for a Kastigar Hearing").  Defendant Bravo moved for a Kastigar-like hearing to dismiss the indictment or suppress evidence due to the alleged improper use of his immunized statements by Federal agents.  (Docket No. 56, "Bravo's Motion for a Kastigar Hearing").  Both defendants moved to dismiss Count 1 of the indictment for failure to allege a conspiracy. (Docket No. 57, "Motion to Dismiss No. 5").  Both defendants moved to dismiss all 18 U.S.C. §666-related counts ("section 666") for failure to allege a crime.  (Docket No. 58, "Motion to Dismiss No. 6").  Both defendants moved to dismiss Counts 4 and 5 for improper venue.   (Docket  No.  59,  "Motion  to  Dismiss  No.  7").   Both

---

[1] A Kastigar-like hearing is an evidentiary hearing held to determine whether any evidence used against a witness in a criminal prosecution was derived, directly or indirectly, from testimony given by the witness under a grant of immunity.  See Kastigar v. United States, 406 U.S. 441, 460 (1972).

defendants moved to dismiss Puerto Rico Bribery Law predicates from the Travel Act charges in Counts 1-3 for failure to allege a crime. (Docket No. 60, "Motion to Dismiss No. 8").  Both defendants moved for the government to dismiss counts pursuant to the Double Jeopardy Clause of the Fifth Amendment.  (Docket No. 61, "Motion to Dismiss No. 9").  Both defendants moved to dismiss the aiding and abetting charges in Counts 2 through 5 based on the statute of limitations and for failure to allege an offense.  (Docket No. 62, "Motion to Dismiss No. 10").  Defendant Martinez moved to dismiss Count 6 of the indictment for being internally inconsistent and for failing to provide defendant Martinez with sufficient notice of charges, in violation of his Fifth and Sixth Amendment rights. (Docket No. 63, "Motion to Dismiss No. 11").

The United States filed consolidated oppositions to all of defendants' motions to dismiss.  (Docket Nos. 72, 73).  The Court addresses each of the motions in turn.  For the reasons described below, the Court **GRANTS** defendant Bravo's motion for a Kastigar-like hearing (Docket No. 56) and **DENIES** defendants' other motions to dismiss.

**DISCUSSION**

## I.    Standard Governing Motion to Dismiss an Indictment

When considering whether to dismiss a count of an indictment, a court "must accept the allegations in the indictment as true." See United States v. Young, 694 F.Supp.2d 25, 27 (D.Me. 2010) (citing Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n. 16 (1952)).  The Court must consider whether the allegations in the indictment are sufficient to inform a defendant as to the charged offense.  See United States v. Sampson, 371 U.S. 75, 76 (1962); United States v. Barker Steel Co., Inc., 985 F.2d 1123, 1125 (1st Cir. 1993).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974) (internal citations omitted).  A court "read[s] an information as a whole" and "construe[s] the allegations in a practical sense, with all necessary implications."  Barker, 985 F.2d at 1125 (internal citations omitted).

## II.  Motion to Dismiss Counts 1 through 5 Based on the Statute of Limitations

Defendants allege that Counts 1 through 5 of the indictment are barred by the five-year statute of limitations established by 18 U.S.C. §3282(a) because a tolling agreement was not properly executed, and because even if the Court were to find the existence of a valid tolling agreement, many of the offenses charged in the indictment are beyond the scope of the tolling agreement.

### A.   Existence of a Valid Tolling Agreement

The indictment was returned on June 22, 2010, which means that any criminal conduct occurring prior to June 22, 2005 would be barred by the statute of limitations unless a valid tolling agreement has been executed.[2]  The government contends that defendants explicitly waived their rights to allege an affirmative defense based on the statute of limitations because defendants knowingly and willingly signed a tolling agreement.  (Docket No. 72 at 2.)  Defendants do  not contest that they and their attorneys signed the tolling agreements, but allege that the agreements never

---

[2] Title 18, United States Code, Section 3282(a), states in part, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

became effective because they were not signed by the government.
(Docket No. 55 at 5.)

        Both parties rely on United States v. Spector, 55 F.3d 22
(1st Cir. 1995) in support of their propositions.  Although the
Spector Court held that the agreement to waive the statute of
limitations was invalid because it was not signed by the
government, the defendants' reliance on Spector in the
circumstances of the present case is misplaced.  Spector held that
the government's failure to sign the agreement resulted in an
invalid agreement because the agreement "expressly called for
acceptance of the offer in the form of a signature by the
government attorney."  Id. at 25.  Spector emphasized the limited
reach of its holding, however, by stating that "we are not saying
that, to be enforced, an agreement to extend the statute of
limitations must be made in writing, or must be signed by the
government . . . [w]e say only that, *where the parties themselves
have chosen to set forth the terms in writing*, it makes sense to
hold them to those terms . . . ."  Id. at 26.  The language of the
Spector court affirms the proposition that the plain language of
the agreements should control whether they are enforceable.  Id.
at 25-26.

In order to address the validity of the tolling agreements in this case, this Court must examine the language contained in those agreements.  Each defendant signed two tolling agreements.  Both defendant Bravo and defendant Martinez signed the first tolling agreement on May 3, 2010, which stipulated that the statute of limitations would be tolled from May 3, 2010, to June 4, 2010.  (Docket Nos. 72-1, 72-2).  The government requested both defendants to sign and return a second tolling agreement to extend the statute of limitations period for the same charges through June 25, 2010, and both defendants did so on May 28, 2010.  (Docket Nos. 72-3, 72-4).[3]  There is no language in any of the tolling agreements that conditions the validity of the agreement on the signature of all parties.  In fact, all of the agreements explicitly state that the defendants waive their rights under the statute of limitations by signing the agreements:  "[b]y signing this document, I knowingly and voluntarily waive any rights I may have under the statute of limitations regarding charges which may result from the grand jury investigation described in this document . . . ".  (Docket Nos. 72-1, 72-2, 72-3, 72-4).  Thus, the

---

[3] The second tolling agreement signed by Bravo is incorrectly dated June 28, 2010 as acknowledged by both parties and reflected in e-mail communications between them.  (See Docket No. 55-6.)

agreements signed by the defendants became effective, by their own

plain terms, once the defendants signed them.[4]

### B.  Offenses Beyond the Scope of the Tolling Agreements

Both defendants also argue that if this Court is to find

the tolling agreements to be valid, which it does, the Court should

limit the scope of the tolling agreements and dismiss certain

charges brought by the government.  Specifically, both defendants

argue that the following charges are beyond the scope of the

tolling agreement and should be dismissed from the indictment:

(1) 18 U.S.C. §2 (aiding and abetting); (2) the gratuity theory of

section 666; (3) the inchoate bribery theory; and (4) the Puerto

Rico bribery predicate for the 18 U.S.C. §1952 counts.

### 1.  Aiding and Abetting Charges

Both defendants claim that because the tolling

agreement makes no reference to tolling the statute of limitations

for aiding and abetting charges pursuant to 18 U.S.C. §2, these

charges should be dismissed.  The defendants point to e-mail

---

[4] Defendants' argue that the presence of signature blocks in
the agreement indicates the parties' intent that the agreement be
signed by all parties to be effective.  (Docket No. 55, Page 8.)
The express language of the agreement, stating that the defendant
waives his rights by signing the agreement, however, controls over
any implicit intent that can be inferred by the presence of
signature blocks in the agreement.

communications between counsel for the parties which indicate that
the defendants intended to limit the tolling agreement to the
charges explicitly listed in the agreement.  (Docket No. 55-3.)
There is no case law directly on point that addresses whether
aiding and abetting charges not explicitly enumerated in a tolling
agreement can nonetheless be brought in an indictment.  The Court
concludes, nevertheless, that the aiding and abetting charges are
not time-barred and should not be dismissed.

        The crime of aiding and abetting is not a
substantive offense.  See United States v. Griffin, 814 F.2d 806,
809 (1st Cir. 1987) ("Section 2(a) does not, by itself, criminalize
any conduct; it simply makes one who aids and abets in the
commission of some substantive offense punishable as a
principal."); see also United States v. Footman, 215 F.3d 145, 153-
4 (1st Cir. 2000) (an aiding and abetting charge is implicit in all
indictments for substantive offenses) (internal citations omitted).
It is well-settled law of the First Circuit that "the government
may rely on an 'aiding and abetting' theory, although the
indictment neither alleges nor adverts to it . . . ."  United
States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990); see also
United States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994) ("[o]ur
court has observed that '[a]iding and abetting is an alternative

charge in every count, whether explicit or implicit,"); United States v. Bradstreet, 135 F.3d 46, 53-4 (1st Cir. 1998) (even if the indictment had not alleged a violation of the aiding and abetting statute, this charge is an "alternative charge in every count . . . ").

While the cases cited above support the proposition that an aiding and abetting charge is implicit in an indictment, this Court finds that the same reasoning applies to charges enumerated in a tolling agreement.  The defendants urge this court to dismiss the aiding and abetting charges as being outside the scope of the tolling agreement signed by them.  Unlike the limited case law both defendants cite, however, this Court does not find that the inclusion of aiding and abetting charges in the indictment implicates broader substantive offenses than those enumerated in the tolling agreement.  Thus, despite the fact that the tolling agreement makes no explicit reference to violations of 18 U.S.C. §2, these charges are permissible and should not be dismissed at this stage of the proceedings.

**2.  The Indictment Charges the Specific Statutes Enumerated in the Tolling Agreement**

Both defendants also allege that the following theories and predicates should be dismissed from the indictment

because they were not elaborated in the tolling agreement: (1) the gratuity theory of section 666; (2) the inchoate bribery theory; and (3) the Puerto Rico bribery predicates under the Travel Act violations.   In reviewing the scope of a tolling agreement, the Court must look to the plain terms of the agreement that the parties have set forth.   See Spector, 55 F.3d at 26.   The tolling agreement states the statutory basis for potential violations of the following substantive offenses:  "Title 18, United States Code, sections 371 (conspiracy), 666 (federal program bribery), and 1952 (travel act)."  (Docket Nos. 72-3, 72-4.)   The indictment charges violations of these same statutes.  (Docket No. 1.)   The defendants do not cite to any relevant case law that supports their claim that a tolling agreement must set forth all the theories and predicates underlying statutory offenses in order to charge defendants with those violations in the indictment.   (See Docket No. 55.)   The government argues that 18 U.S.C. §3282, which defines the statute of limitations for the indictment, applies only to offenses, and not to theories or predicates.  (Docket No. 72 at 12.)   The Court finds this argument persuasive and sees no need to go beyond the plain language of the statute and the tolling agreement, which comports with the requirements of 18 U.S.C. §3282.   Because the tolling agreement clearly sets out the statutory offenses under

which defendants may face conviction, and the indictment does not allege any additional substantive statutory offenses, the Court finds no reason to dismiss any of the theories or predicates underlying the statutory offenses.  Thus, defendants' Motion to Dismiss No. 1 is **DENIED.**

## III. Motion to Dismiss Indictment Due to Erroneous Grand Jury Charge and Abuses Before the Grand Jury

Both defendants move to dismiss the indictment under Federal Rule of Criminal Procedure 12.  Specifically, the defendants argue that:  (a) the grand jury was improperly charged with the Model Grand Jury Charge, which instructs jurors to indict defendants based on a showing of probable cause; and (b) the Puerto Rico grand jury was rushed to judgment because the statute of limitations was set to expire, the government utilized summary witnesses and relied on hearsay testimony, and the grand jury was denied the opportunity to investigate the charges against defendants thoroughly.  (See Docket No. 68.)

### A.   Constitutionality of the Model Grand Jury Charge

The defendants argue that the Model Grand Jury Charge is constitutionally flawed.  The instructions, which have been approved by the Judicial Conference of the United States, instruct jurors to return indictments only against those whom the grand jury

finds "probable cause to believe are guilty and to see to it that the innocent are not compelled to go to trial." (Docket No. 68-1.) The defendants make lengthy policy arguments in their brief, citing to dissenting judges' opinions, treatises, and law review articles in support of their argument that the instructions are unconstitutional because they instruct jurors to indict upon finding probable cause and they encourage deference to the prosecution. (Docket No. 68.)

Although the First Circuit Court of Appeals has not ruled on this precise issue, both the Ninth and Eleventh Circuit Courts of Appeals have addressed the constitutionality of the Model Grand Jury Charge. See United States v. Navarro-Varga, 408 F.3d 1184, 1186 (9th Cir. 2005); United States v. Knight, 490 F.3d 1268, 1272 (11th Cir. 2007). Navarro-Varga affirmed the district court's denial of defendants' motion to dismiss their indictments, finding that the model charge jury instructions did not violate the Constitution. Navarro-Vargas, 408 F.3d at 1186; see also Knight, 490 F.3d at 1272 (holding that no constitutional violation existed where grand jury instructions stated that jurors "should" indict if sufficient evidence was presented because the "grand jury could easily understand it was independent from the court and could indict or not based upon the evidence."). Similar to the

defendants before the Court, the defendants in Navarro-Vargas

alleged "that the grand jury's independence was compromised when it

was instructed . . . that it 'should vote to indict' the accused in

each case in which it believed probable cause exists, that it could

not 'judge the wisdom of the criminal laws enacted by Congress,'

and that government counsel would use 'candor, honesty, and good

faith.'" Id. at 1187-88.  The court held that the instruction that

the jury "should indict" did not violate the grand jury's

independence nor did it violate the defendant's Fifth Amendment

rights.  Id. at 1204-06.  The court also held that the "candor,

honesty, and good faith" language may be surplusage, but, "read in

the context of the instructions as a whole, does not violate the

constitutional relationship between the prosecutor and grand jury."

Id. at 1207.  While defendant Bravo and defendant Martinez

encourage the Court to follow the dissenting opinion of Navarro-

Vargas, which stated that the jury instructions were

unconstitutional "because they actively mislead grand jurors into

thinking their powers are more constrained than they are", the

Court finds the reasoning of the majority decision to be sound and

rejects defendants' request to dismiss the indictment based on an

improper jury charge.

**B.    Indictment Returned by an Independent and Informed Grand Jury**

Both defendants argue that the indictment was not returned by an independent and informed grand jury because of the government's use of summary witnesses and hearsay testimony, and because of the time pressure of the statute of limitations deadline.  (Docket No. 68.)  "[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."  Bank of N.S. v. United States, 487 U.S. 250, 254 (1988); see United States v. Flores-Rivera, 56 F.3d 319, 328 (1st Cir.1995); United States v. Santana, 6 F.3d 1, 11 (1st Cir. 1993).  The standard is stringent because of the strong "presumption of regularity" afforded to grand jury proceedings.  United States v. Lopez, 854 F.Supp. 50, 53 (D.P.R. 1994) (internal citations omitted).  In assessing claims of prosecutorial misconduct like those alleged here, dismissal of an indictment "will be ordered only for serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process."  United States v. Rivera-Santiago, 872 F.2d 1073, 1088 (1st Cir. 1989) (internal citations omitted).

The defendants' allegations of prosecutorial misconduct do not meet the heavy burden to rebut the presumption of regularity

afforded to grand jury proceedings.  <u>See</u> <u>Costello v. United States</u>,

350 U.S. 359, 409 (1956) ("[a]n indictment returned by a legally

constituted and unbiased grand jury . . . if valid on its face, is

enough to call for trial of the charge on the merits.  The Fifth

Amendment requires nothing more.").   Unlike the cases cited in

their brief, the defendants have provided no evidence of "'serious

and blatant prosecutorial misconduct' that distorted the integrity

of the judicial process." <u>Rivera-Santiago</u>, 872 F.2d at 1088; <u>cf.</u>

<u>United States v. Samango</u>, 607 F.2d 877, 881 (9th Cir. 1979)

(affirming dismissal of indictment where the cumulative effect of

the errors and indiscretions of the prosecutor "represented a

serious threat to the integrity of the judicial process" and

"operated to the defendant's prejudice by producing a biased grand

jury"); <u>United States v. Breslin</u>, 916 F.Supp. 438, 441 (E.D.Pa.

1996) (dismissing indictment where review of testimony and

prosecutor's statements indicated, among other things, that

prosecutor had inappropriately bonded with the grand jury,

repeatedly suggested that he was short on time, improperly

characterized evidence and inserted his opinions into his

presentation of the evidence, misled the jury to believe that live

testimony was unavailable, and gave the jury an improper charge

regarding what was to be included in the indictment).  Particularly

notable is the fact that in dismissing indictments based on prosecutorial misconduct, those courts have done so after reviewing the transcripts from the grand jury proceedings and noting numerous instances of misconduct, the cumulative effect of which "can fairly be said to have 'substantially influenced the grand jury's decision to indict.'" Breslin, 916 F.Supp. at 446 (quoting Samango, 607 F.2d at 884).

The defendants' contention that the indictment should be dismissed because the government's use of hearsay testimony and summary witnesses and the time pressure of an approaching statute of limitations deadline constituted such an abuse of prosecutorial misconduct is without merit.  As the government correctly points out, the Federal Rules of Evidence do not apply to grand jury proceedings and "[l]eading questions and multiple hearsay are permitted and common." McKethan v. United States, 439 U.S. 936, 938 (1978); see also United States v. Ortiz de Jesus, 230 F.3d 1, 4 (1st Cir. 2000) (appellant failed to prove that any prosecutorial misconduct had occurred, partly because there is "no prohibition on either the presentation of hearsay evidence to a grand jury or the grand jury's use of that hearsay evidence in determining whether to indict.")  The use of summary witnesses by the government also does not meet the standards of prosecutorial misconduct that would

warrant dismissal of the indictment.  See Bank of N.S., 487 U.S.
260-3 (noting that where "a challenge is made to the accuracy of
the summaries [offered by government agents to the grand jury], the
mere fact that evidence itself is unreliable is not sufficient to
require dismissal of the indictment" when the indictment is valid
on its face).  Lastly, defendants' allegation that the speed with
which the indictment was returned implies the kind of flagrant
prosecutorial misconduct that warrants a dismissal of the
indictment is unsupported in defendants' brief.  For the reasons
mentioned above, defendants' Motion to Dismiss No. 2 is **DENIED**.

**IV.  Defendant Martinez's Motion for a Kastigar Hearing Due to
      Alleged Government Intrusion into the Attorney-Client
      Relationship**

Defendant Martinez requests a Kastigar hearing for the purpose
of dismissing the indictment or suppressing evidence "because of
the government's deliberate invasion of the attorney-client
relationships" between defendant Martinez and Victor Rivera-Torres
("Rivera") and Jose Velazquez-Quiles ("Velazquez").  (Docket No.
70.)  The Court must decide whether there is an attorney-client
relationship between defendant Martinez and Messrs. Torres and
Velazquez, and if so, to what extent the privilege was invaded.
Defendant Martinez has the burden of proving that the
communications he had with government attorneys was privileged.  In

re <u>Lindsey</u>, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("[i]t is settled law that the party claiming the privilege bears the burden of proving that the communications are protected.")

### A.    Attorney-Client Relationship Between Defendant Martinez and Mr. Rivera

Defendant Martinez alleges that the retainer agreement between Mr. Rivera and him indicates that even though Mr. Rivera was paid by the Senate, "he was hired to be Sen. Martinez's lawyer." (Docket No. 70 at 4.)  The retainer agreement reads in part, "The SENATE needs and wishes to obtain the professional services of Attorney Rivera-Torres as Attorney in the Office of Senator Hector J. Martinez-Maldonado."  (Docket No. 70-6 at 2.) Thus, contrary to defendant Martinez's allegations, Mr. Rivera was not hired to be defendant Martinez's lawyer, but "to provide the [] professional services to the SENATE . . .".  <u>Id.</u>  Further evidence that the retainer agreement is one between the Senate and Mr. Rivera is the fact that the agreement was signed by Mr. Rivera and Manuel Torres-Nieves ("Torres"), the Secretary of the Senate of Puerto Rico.  <u>Id.</u> at 8.  Defendant Martinez's signature does not appear anywhere in the agreement, which further supports the claim that Mr. Rivera was hired by the Senate to provide professional services to it, "in the Office of [defendant] Martinez."

The Court now turns to the question of whether defendant Martinez, as a government employee, can assert the attorney-client privilege with respect to communications he had with Mr. Rivera, whose client was the Senate.  The parties note that there is a circuit split with regard to this very issue.  The Seventh Circuit Court of Appeals has ruled that in the context of a federal criminal investigation, no attorney-client privilege exists between a state office-holder and a state government attorney.  <u>In re A Witness Before the Special Grand Jury</u>, 288 F.3d 289, 290 (7th Cir. 2002) ("Ryan").  In <u>Ryan</u>, the Chief Legal Counsel to the Secretary of State for the State of Illinois ("Bickel") provided legal counsel and advice to former Secretary of State Ryan as he carried out his public duties.  <u>Id.</u>  Bickel had also served as personal lawyer to Secretary Ryan, his wife and his campaign committee for years beforehand.  <u>Id.</u>  During an investigation for a bribery scandal in the Illinois Secretary of State's office, Bickel was subpoenaed to testify before the grand jury about conversations he had with Secretary Ryan in his official capacity as Chief Legal Counsel to the Secretary of State.  <u>Id.</u> at 290-91.

In holding that the attorney-client privilege extends to the office, and not to the employees in the office, the court reasoned that "interpersonal relationships between an attorney for

the state and a government official acting in an official capacity must be subordinated to the public interest in good and open government, leaving the government lawyer duty-bound to report internal criminal violations, not to shield them from public exposure." <u>Ryan</u>, 288 F.3d at 294.   The court also noted that because government attorneys, as state employees, are compensated by the state itself, "[i]t would be both unseemly and a misuse of public assets to permit a public official to use a taxpayer-provided attorney to conceal from the taxpayers themselves otherwise admissible evidence of financial wrongdoing, official misconduct, or abuse of power." <u>Id.</u> at 293.   The Seventh Circuit Court of Appeals followed the reasoning of the decisions of two other courts of appeals arising out of the Independent Counsel investigations of President Clinton.   <u>See</u> <u>In re</u> <u>Lindsey</u>, 158 F.3d 1263, 1278 (D.C. Cir. 1998) ("When government attorneys learn, through communications with their clients, of information related to criminal misconduct, they may not rely on the government attorney-client privilege to shield such information from disclosure to a grand jury."); <u>In re</u> <u>Grand Jury Subpoena Duces Tecum</u>, 112 F.3d 910, 921 (8th Cir. 1997) ("to allow any part of the federal government to use its in-house attorneys as a shield against the production of information relevant to a federal

criminal investigation would represent a gross misuse of public assets.").

The Second Circuit Court of Appeals, however, has adopted a viewpoint on this issue that "is in conflict with the Seventh Circuit's decision in Ryan, and is in sharp tension with the decisions of the Eighth (Grand Jury) and the D.C. Circuits (Lindsey)." In re Grand Jury Investigation, 399 F.3d 527, 536, n.4 (2nd Cir. 2005). The Second Circuit Court of Appeals reversed the district court's opinion granting the government's motion to compel the former chief legal counsel in the governor's office to reveal to the federal grand jury the contents of private conversations she had with the governor and other staff members for the purpose of providing them legal advice. Id. at 528. The court of appeals held that the state governor's office could invoke the attorney-client privilege against the federal government's grand jury inquiries into the alleged bribery of state public officials and employees. Id. at 531 ("[A] consistent application of the [attorney-client] privilege over time is necessary to promote the rule of law by encouraging consultation with lawyers.") The court acknowledged that the public has an interest in the grand jury being able to collect all relevant evidence in a federal criminal investigation, but stated that "it is also in the public interest

for high state officials to receive and act upon the best possible legal advice." Id. at 534.

While defendants request this Court to follow the holding of the Second Circuit, this Court finds the reasoning behind the opinions of the Seventh, Eighth and D.C. Circuits to be compelling. Thus, in the context of a federal criminal investigation such as the one before the Court, where defendant Martinez is a government official who was acting in an official capacity when communicating with Mr. Rivera, a state attorney, this Court finds that no attorney-client privilege existed between defendant Martinez and Mr. Rivera, the state government lawyer.

## B.   Attorney-Client Relationship Between Defendant Martinez and Mr. Velazquez

Defendant Martinez alleges that Mr. Velazquez worked as his "legal advisor" and therefore maintained an attorney-client relationship with defendant Martinez. (Docket No. 70 at 10.) Mr. Velazquez was disbarred at the time he provided "legal advice" to defendant Martinez and thus, no attorney-client relationship existed. In defendants' supplement to the motion to dismiss, defendants acknowledge that Mr. Velazquez was suspended from the practice of law in 1993, reinstated in 1998, suspended for a second time in 2004, and remains suspended since then. (Docket No. 116;

see also Docket No. 113.)  Defendant Martinez asks this Court to believe that when Mr. Velazquez was hired by the Senate to provide legal advice to him in 2005, defendant Martinez did not know Mr. Velazquez was unlicensed and "reasonably believed" that Mr. Velazquez was his attorney, and thus the attorney-client privilege should attach.  Id.

          The Court need go no further than to review the employment contract between Mr. Velazquez and the Senate to determine that defendant Martinez's beliefs (if they really existed) were in no way reasonable under the circumstances.  The Contract for Professional Services between the Senate of Puerto Rico and Mr. Velazquez never once refers to Mr. Velazquez as an attorney, and instead refers to him as a "legislative advisor" numerous times throughout the document.  (Docket No. 70-7.)  The evidence is even more damning to defendant Martinez's case when Mr. Velazquez's contract is compared with the Contract for Professional Services between the Senate of Puerto Rico and "Attorney Rivera-Torres", which explicitly refers to Mr. Rivera as "legal advisor" and "attorney" throughout the document.  The plain language of the contracts makes clear to this Court that defendant Martinez had no reasonable belief that he was being provided legal advice by a licensed attorney (Velazquez).  See United States v. Boffa, 513

F.Supp. 517, 525 (D.Del. 1981) (concluding that no attorney-client privilege attached where defendants "failed to prove that they genuinely and reasonably believed that [a non-lawyer] was an attorney.")   Thus, no attorney-client privilege existed between defendant Martinez and Mr. Velazquez.   Based on the analysis above, defendant Martinez's Motion for a Kastigar Hearing is **DENIED.**

**V.   Defendant Bravo's Motion for a Kastigar Hearing Due to Alleged Violation of His Fifth Amendment Rights**

Defendant Bravo alleges that federal agents investigating the case against him obtained possession of his immunized statements given to the Commonwealth of Puerto Rico's Special Independent Prosecutor ("SIP") and the SIP's notes memorizing those statements. (Docket Nos. 56 and 126.)   The government does not deny that it is in possession of the information, but instead argues that defendant Bravo's motion for a Kastigar hearing lacks merit because (1) defense counsel did not object to the government obtaining the SIP's notes, (2) defendant Bravo seeks a remedy based on his agreement with the local prosecutor, not the Department of Justice or the FBI, and (3) alternative remedies exist to remedy defendant Bravo's concerns regarding this violation.

The Supreme Court has held that a person whose testimony is compelled under a grant of immunity is entitled to a hearing in

which the prosecution has the burden of proving that "the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." Kastigar v. United States, 406 U.S. 441, 460 (1972).  The court further clarified that the protection of the Fifth Amendment requires that "[t]his burden of proof . . . is not limited to a negation of taint" but requires the government to establish "that they had an independent, legitimate source for the disputed evidence." Id. (internal citations omitted.)  A defendant must simply demonstrate "that he has testified, under a state grant of immunity, to matters related to the federal prosecution" in order to shift the "heavy" burden to the government to negate any taint and affirmatively prove that the evidence it used was derived from legitimate, wholly independent sources.  United States v. Serrano, 870 F.2d 1, 14-15 (1st Cir. 1989) (citing Kastigar, 406 U.S. at 460).

        In this case, defendant Bravo has demonstrated, through evidence of a signed agreement between the SIP and Bravo, that he provided testimony to the SIP related to the prosecution of former Senator Jorge de Castro-Font under a grant of immunity which stated in part:  "[y]our testimony and the information that you provide, and what is derived from the same, will not be used against you to initiate a legal action for the crimes which arise from your

testimony, nor will they be referred to the Department of Justice
of Puerto Rico nor [sic] to the federal authorities."   (Docket
No. 56-1.)   It is undisputed that on June 8, 2010, the Office of
the SIP turned over to the FBI a copy of Bravo's immunity agreement
and notes taken during Bravo's interview.   (Docket Nos. 56-2 & 56-
3; see also Docket No. 126.)   The agents notified the government
attorneys of the documents they had received.   (Docket No. 56-3.)
Because defendant Bravo has satisfied his burden, the burden shifts
to the government to prove that the evidence presented to the grand
jury, which resulted in an indictment against defendant Bravo, was
not derived, directly or indirectly, from the statements that
defendant Bravo made to the SIP under immunity.

The government's assertions that it "acted prudently" are
irrelevant.  Because the government does not dispute that defendant
Bravo testified under immunity in his interviews with the SIP "to
matters related to the federal prosecution", it is now incumbent
upon the government to show that it "had an independent, legitimate
source for the disputed evidence."   Serrano, 870 F.2d at 15
(internal citations omitted).   The "heavy" burden articulated in
Kastigar has been interpreted to mean that "the government need
only demonstrate by a preponderance of the evidence an independent
source for all evidence introduced."   United States v. Serrano, 680

F.Supp. 58, 63 (D.P.R. 1988) (internal citations omitted).   The
government's claims that "no information related to the indictment
of Mr. Bravo was derived from these notes [of the SIP]" are
insufficient, however, to meet the burden at this stage of the
proceedings.   (Docket No. 56-3.)   See Serrano, 680 F.Supp. at 63
("Of course, the government's representations that it did not make
any use of [defendant's] testimony, standing alone, are generally
insufficient to meet its burden, even if made in good faith.")

    The government urges this Court to impose an alternative
remedy, instead of an evidentiary hearing, to address the concerns
raised by defendant Bravo.   (Docket No. 72 at 18.)   The Supreme
Court in Kastigar did not explicitly state that an evidentiary
hearing was necessary for the government to meet its burden.   See
United States v. Gianelli, 658 F.Supp.2d 255, 260 (D.Mass. 2009)
(denying defendant's request for an evidentiary hearing where the
government filed a "lengthy opposition" in which it showed that it
had "prior knowledge of substantially all of the matters as to
which [defendant] testified and . . . any use of such information
was, in any event, harmless . . .").   In United States v. Romano,
however, the First Circuit Court of Appeals noted that "[t]he
question of whether any use, derivative or otherwise, was made of
the compelled testimony by the prosecution, is one of fact on which

. . . the district court ordinarily holds a separate hearing."
United States v. Romano, 583 F.2d 1, 7 (1st Cir. 1978) (citing
United States v. De Diego, 511 F.2d 818, 824 (D.C. Cir. 1975)).  In
this case, the government has not yet demonstrated, through any
documentation, that the evidence it presented to the grand jury and
proposes to use at trial was derived from "a legitimate source
wholly independent of the compelled testimony."  Kastigar, 406 U.S.
at 460 (1972).  For the reasons mentioned above, defendant Bravo's
Motion for a Kastigar Hearing is **GRANTED.**

## VI.  Motion to Dismiss Count One for Failure to Allege a Conspiracy

Both defendants move the Court to dismiss Count One of the
indictment for failure properly to allege a conspiracy to commit
offenses against the United States in violation of 18 U.S.C. §371.
The defendants contend (1) that the government has failed to allege
that the defendants had an agreement to commit the same crime,
(2) that the government has improperly charged a "rimless wheel"
conspiracy, and (3) that there are alleged overt acts which should
be dismissed from the indictment because they occurred after the
completion of the conspiracy.

The First Circuit Court of Appeals has held that "[i]t is
generally sufficient that an indictment set forth the offense in
the words of the statute itself, as long as 'those words of

themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" United States v. Cianci, 378 F.3d 71, 81 (1st Cir. 2004) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  Count One of the indictment plainly charges defendants with conspiracy to commit the following offenses:  (1) federal programs bribery in violation of 18 U.S.C. §§2 and 666(a)(1)(B); federal programs bribery in violation of 18 U.S.C. §§2 and 666(a)(2); and interstate travel in aid of racketeering in violation of 18 U.S.C. §§2 and 1952(a)(3)(A).  The indictment explains the nature of the offenses, and goes into considerable detail regarding the purpose of the conspiracy, the manner and means of the conspiracy, and the overt acts allegedly committed in furtherance of the conspiracy.  From the face of the indictment, it appears that it sufficiently informs both defendants of the charges against them.  See Cianci, 378 F.3d at 81.  The Court will nevertheless briefly address each of the defendants' arguments.

**A.   The Indictment Alleges an Agreement to Commit the Same Crime**

The defendants contend that because the indictment alleges that defendant Bravo offered a bribe and defendant Martinez

accepted a bribe (two separate offenses), the defendants cannot be convicted of conspiracy for bribery.  (Docket No. 57.)  The defendants do not offer any legal support, however, for their claim that the government has failed to allege that defendants conspired to commit the crime of bribery.  In fact, it is difficult to see how the facts alleged are insufficient to support a charge of conspiracy.  The First Circuit Court of Appeals has held that evidence showing that defendant government agent received "something of value" from a private citizen and that the government agent "obtained the cash payments, loans, and special treatment 'intending to be influenced or rewarded' for his help" protecting the interests of the private citizen was sufficient evidence to support defendant's charge of conspiracy to violate section 666(a)(1)(B), which prohibits an agent of the government from accepting a bribe.  United States v. Freeman, 208 F.3d 332, 340-41 (1st Cir. 2000).  By the same reasoning, this Court finds the allegations in the indictment that defendant Bravo offered a bribe and defendant Martinez accepted that bribe to be sufficient enough to support a charge of conspiracy for bribery at this stage of the proceedings and to withstand a motion to dismiss.

**B.   The Indictment Does Not Charge a "Rimless Wheel" Conspiracy**

Defendants allege that the government has failed to allege a single, general conspiracy among all the alleged co-conspirators (defendant Bravo, defendant Martinez, and Jorge de Castro-Font), and has instead alleged a "rimless wheel" conspiracy, which cannot be charged.  (Docket No. 57.)  "A single conspiracy exists where the totality of the evidence demonstrates that 'all of the alleged co-conspirators directed their efforts towards the accomplishment of a common goal or overall plan.'"  United States v. Brandon, 17 F.3d 409, 450 (1st Cir. 1994) (internal quotations omitted) (finding that the evidence "indicates the existence of a single, unified conspiracy" where "all the defendants were part of an integrated, interdependent scheme in which each defendant depended upon and was connected to the others.")  The First Circuit Court of Appeals found in Brandon that in a scheme where defendants sought to "obtain financing for a condominium project by falsely representing the existence of down payments that were never made", the fact that "different defendants were involved in separate transactions for the purchase of different properties at different motels" did not indicate the lack of a single continuing plan.  Id. at 451.  The court distinguished the facts from those of United

States v. Kotteakos, where the Supreme Court found that an indictment alleged a "rimless wheel" conspiracy where each of the defendants had transacted business with one common defendant, but there was no relationship or connection between the defendants, other than the common defendant's connection with each transaction. 328 U.S. 750, 754 (1946).

The defendants ask this Court to analogize the facts of this case to those of Kotteakos. While it is true that the indictment does not make any allegations that defendant Martinez was actively involved with defendant Bravo's offer or De Castro-Font's acceptance of a bribe, and that defendant Martinez was not sworn in as a Senator until after the alleged bribes between defendant Bravo and De Castro-Font had taken place, the Court finds that "the scheme, the main objective, structure, intended victim, and modus operandi [of the conspiracy] remained constant" and thus, no "rimless wheel" conspiracy exists in this case. Brandon, 17 F.3d at 450. The indictment sufficiently alleges the existence of a single continuing plan among all three individuals: in exchange for things of value accepted from defendant Bravo, defendant Martinez and De Castro-Font agreed to vote in favor of certain legislation that would benefit defendant Bravo. The indictment alleges that the three individuals had direct contact with one

another with regard to the means and manner of the conspiracy, specifically, that defendant Bravo offered both defendant Martinez and De Castro-Font a trip to Las Vegas, Nevada with defendant Bravo, which they both accepted, and that all three individuals traveled to Las Vegas together, stayed in the same hotel together, watched a professional boxing match together, and presumably discussed defendant Bravo's desired legislation together. (Docket No. 72 at 25.) Therefore, the Court finds that the indictment sufficiently alleges the existence of a single continuing conspiracy.

### C.    The Dismissal of Paragraphs 68-73 in Count One of the Indictment is Not Required

The defendants ask this Court to dismiss paragraphs 68-73 from Count One of the indictment because the alleged acts "all occurred after the alleged objectives of the conspiracy were complete and, as such, those acts cannot have been taken 'to effect the object of the conspiracy.'" (Docket No. 57 at 7.) The defendants' contention that the conspiracy ended when the bribes had been offered and accepted is legally incorrect. As the government points out, the crime of bribery requires a *quid pro quo* - "a specific intent to give or receive something of value *in exchange* for an official act." United States v. Sun-Diamond

Growers of California, 526 U.S. 398, 404-5 (1999).  Furthermore,

the First Circuit Court of Appeals has held that "a conspiracy

continues until the anticipated economic benefits of the defendant

are realized."  United States v. Fitzpatrick, 892 F.2d 162, 167-8

(1st Cir. 1989) (finding that overt acts included payments made to

defendant after he approved bank loans that did not meet the bank's

stated requirements, because "a conspiracy continues until the

conspirators receive their payoffs.")  Thus, paragraphs 69-73 of

the indictment, concerning actions taken by defendant Martinez and

De Castro-Font to promote the passage of Senate Bills 470 and 471,

are overt acts within the conspiracy because the passage of the

legislation was precisely the payoff that defendant Bravo was to

receive in exchange for the payment of his bribes which were

accepted by defendant Martinez and De Castro-Font.  Because the

conspiracy continued until the passage of the legislation, it must

be concluded that paragraph 68 of the indictment, which alleges

that defendant Bravo and De Castro-Font destroyed records to

conceal the bribe payments, also qualifies as an overt act "done in

furtherance of the main criminal objectives of the conspiracy" and

will not be dismissed from the indictment.  See Grunewald v. United

States, 353 U.S. 391, 405 (1957) (noting the "vital distinction"

"between acts of concealment done in furtherance of the main

criminal objectives of the conspiracy [which can be considered to be overt acts], and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime.")   Based on the reasoning above, defendants' Motion to Dismiss No. 5 is **DENIED**.

## VII. Motion to Dismiss All Section 666-Related Counts for Failure to Allege a Crime

Defendants ask this Court to dismiss all of the section 666-related counts because the government has failed properly to allege (1) that defendant Martinez is an agent of any State entity that (2) received over $10,000 in federal benefits, (3) that the alleged bribery involved a transaction in connection with a thing of value worth more than $5,000, and (4) that prosecuting defendants does not violate the Spending Clause or the defendants' due process. The Court addresses each of these allegations in turn.

### A.    Defendant Martinez is an Agent of a State Entity That Received Over $10,000 in Federal Benefits

Both defendants argue that the government has failed to allege that defendant Martinez, a state senator for the Commonwealth of Puerto Rico, is an agent of the State under the requirements of section 666. Defendants cite to United States v. Sunia as support for their proposition. Sunia held that defendants, who were agents of the American Samoa legislature (as

legislator and counsel), were not "agents" of the Departments of
Treasury and Education (part of the executive branch of government)
for the purposes of liability under section 666, because the
departments had no power over the defendants' duties, salaries or
benefits, and the defendants had no control over the programs or
funds of the departments or the legal authority to bind those
departments.  643 F.Supp.2d 51, 62-65 (D.D.C. 2009).  While the
defendants here accurately state the holding of <u>Sunia</u>, the facts of
that case differ significantly from the facts of this case.  This
Court finds the language in <u>Sunia</u> to be helpful, but also looks to
the language and holding of <u>United States v. Lipscomb</u>, 299 F.3d 303
(5th Cir. 2002) for guidance.  Unlike the defendants in <u>Sunia</u>,
defendant Martinez is a legislator who was allegedly "engaging in
corrupt acts at the governmental level" and who allegedly
"misuse[d] his legislative authority to facilitate corrupt
practices affecting agency programs that receive federal funds."
<u>Sunia</u>, 643 F.Supp.2d at 67; <u>see also</u> <u>Lipscomb</u>, 299 F.3d at 315
(finding that defendant, a former member of the Dallas City
Council, was susceptible to conviction under section 666 because
"[i]n Dallas, federal money supports the City's transportation and
human services departments - the very agencies of city government
that [defendant] sought corruptly to influence.")  The <u>Lipscomb</u>

court also engaged in a detailed analysis regarding the reach of section 666 and noted that "Congress clearly sought to apply §666 to legislative-branch officials." Lipscomb, 299 F.3d at 333.

The indictment also alleges that "[t]he Commonwealth of Puerto Rico was a State Government which received federal assistance in excess of $10,000." While the indictment does not go into more detail, the Court must accept the allegations in the indictment as true at this stage of the proceeding and therefore finds this allegation to be sufficient. See Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n. 16 (1952). The Court notes the "inherent federal interest in insuring that agencies receiving significant amounts of federal funding are not 'corrupt'", and finds that defendant Martinez, as an elected official of the legislative branch who allegedly engaged in conduct that would threaten the integrity of the federal funds, is, pursuant to section 666, considered an "agent" of the state entity that received those funds. Lipscomb, 299 F.3d at 314 (quoting United States v. Phillips, 219 F.3d 404, 422-23 (5th Cir. 2000)).

**B.   The Bribery Was Made in Connection with a Transaction Involving a Thing of Value Worth More than $5,000**

The defendants next argue that even if the Court were to find that defendant Martinez was an "agent" of a State entity that

receives more than $10,000 in federal benefits, which it does,
there is still no section 666 violation because the bribery is not
a "transaction . . . involving anything of value of $5,000 or
more." 18 U.S.C. §§666(a)(1)(b), 666(a)(2).   The defendants'
contention that a "transaction" or "business" under section 666
must involve some "negotiated financial exchange" would result in
too narrow a reading of the statute and is not supported by any
relevant case law.   See Docket No. 58 at 9-10.   Although the
statute itself does not define the terms "transaction" or
"business", the Supreme Court, in analyzing a claim under
section 666, has advised courts to refrain from imposing a
"narrowing construction" of the business or transaction clause,
notably because it is prefaced by the word "any".   Salinas v.
United States, 522 U.S. 52, 57 (1997) (holding in part that a bribe
need not affect federal funds to violate the federal bribery
statute).   The Supreme Court makes numerous references to the
statute's "expansive, unqualified language, both as to the bribes
forbidden and the entities covered" and the "broad definition of
the 'circumstances' to which the statute applies."   Id. at 57-58.
The defendants also argue that the alleged bribery was not "in
connection with" any federally funded program.   (Docket No. 58
at 11.)   The indictment alleges that defendant Martinez accepted

things of value (including a round-trip flight to Las Vegas, accommodation, and tickets to a professional boxing match) from defendant Bravo, "intending to be influenced or rewarded in connection with" the transaction of passing legislation which involved a "thing of value" to defendant Bravo (the legislation would have provided defendant Bravo with a significant competitive advantage in his business).  Unlike United States v. Whitfield, 590 F.3d 325 (5th Cir. 2009), cited by defendants, there is a direct connection alleged in this case between the bribe offered by defendant Bravo and accepted by defendant Martinez and the transactions and business of the legislature, part of the government of the Commonwealth of Puerto Rico, which the government alleges has received over $10,000 in federal benefits.  Cf. Whitfield, 590 F.3d at 345-6 (5th Cir. 2009) (holding that state judges who were "agents" of the Mississippi Administrative Office of the Courts (AOC) - whose purpose is to "assist in the efficient administration of the non-judicial business of the courts of the state - could not be held liable under section 666 for accepting bribes to make certain decisions in cases before them because the judges' role as agents of the AOC "had nothing to with their capacity as judicial decisionmakers.")  In this case, defendant Martinez's role as a legislator makes him an agent of the State,

and the bribe that he allegedly accepted was connected to the business of the legislature - i.e., passing legislation - that would have benefitted defendant Bravo.

The defendants claim that the government cannot establish that the Commonwealth of Puerto Rico was deprived of property worth $5,000 due to the alleged bribery. The plain meaning of the statute covers "anything of value" and thus includes transactions involving intangible items. See United States v. Marmolejo, 89 F.3d 1185, 1191-92 (5th Cir. 1996) (holding that the plain meaning of section 666 "includes transactions involving intangible items, such as the conjugal visits at issue in this case.") Additionally, as both defendants and the government point out, the rationale behind the $5,000 restriction in section 666 was based upon Congress's intent to limit the application of the statute to "only the most serious instances of governmental corruption." United States v. Mills, 140 F.3d 630, 632 (6th Cir. 1998). Because the Court must take the allegations in the indictment as true, at this stage of the proceedings, there is no reason to hold that the passage of Senate Bills 410 and 471 were not valued at $5,000 by defendant Bravo.

### C.   There was No Violation of the Spending Clause or Due Process

Defendants assert that applying section 666 to the conduct of defendant Martinez, who, as a state official, took action to pass legislation where no federal dollars were spent, would be a violation of the Spending Clause.  The Supreme Court, in Sabri v. United States, upheld section 666 as being facially constitutional pursuant to Congress's spending power, finding that the broad scope of the statute did not require a nexus between the corrupt activity and the federal funds affected.   541 U.S. 600, 606-08 (2004).  The Fifth Circuit Court of Appeals considered an argument similar to the argument proposed by defendants and rejected it, holding that the conduct regulated by section 666 need only be "reasonably related to a federal interest", thus making it "necessary and proper to Congress's exercise of its spending power."   Lipscomb, 299 F.3d at 336-37 (rejecting defendant's argument that his conduct must threaten the integrity of federal funds "more directly" in order for section 666 to apply, and finding that Congress had a legitimate interest in "preventing federal funds from passing through state and local legislative bodies whose members are corrupt, and to do so with the deterrent of criminalizing the legislators' corruption, even with respect to

purely state or local issues . . .").  Just as the court found in
Lipscomb, this Court also finds that Congress intended to regulate
the alleged corrupt conduct of state officials that impacts the
manner in which federal funds pass through the legislature.

Finally, this Court finds that the defendants' due
process claims do not hold water.  Contrary to their claim that
section 666 has never been applied in this manner before,
Congress's purpose in enacting the statute was "to extend coverage
to bribes offered to state and local officials employed by agencies
receiving federal funds."  Salinas, 522 U.S. 52 (1997).  The
indictment fulfills the requirements needed to survive a motion to
dismiss on the section 666-related counts; thus, defendants' Motion
to Dismiss No. 6 is **DENIED.**

## VIII. The Defendants' Motion to Dismiss Counts 4 and 5 for Improper Venue

Defendants argue that venue is not proper in Puerto Rico with
regard to the alleged violations of section 666 because the bribes
were "given" and "accepted" in Nevada and Florida, not in Puerto
Rico.  (Docket No. 59.)  The indictment charges that a trip to Las
Vegas was offered by defendant Bravo and accepted by defendant
Martinez and De Castro-Font in Puerto Rico.  (Docket No. 1 at
¶¶ 42-43.)  The indictment further alleges that tickets for the

boxing match in Las Vegas were purchased by defendant Bravo in
Puerto Rico.  (Docket No. 1 at ¶¶45-46.)  The indictment charges
that defendant Martinez and defendant Bravo and De Castro-Font
traveled together to and from San Juan, Puerto Rico to Las Vegas,
Nevada.  (Docket No. 1 at ¶¶59-66.)  Finally, the indictment
alleges that defendant Martinez and De Castro-Font voted in favor
of passing Senate Project 471 and 410 in Puerto Rico.  (Docket
No. 1 at ¶¶69-73.)

     The defendants correctly recite the applicable law regarding
venue in criminal prosecutions initiated by the government:  while
the government has "the first crack at selecting the venue", "the
government must prove by a preponderance of the evidence that venue
is proper as to each individual count" if the choice is challenged
by defendants.  United States v. Salinas, 373 F.3d 161, 163 (1st
Cir. 2004).  The purpose of limiting criminal prosecutions to "a
district in which the offense was committed" is to provide a
"safety net, which ensures that a criminal defendant cannot be
tried in a distant, remote, or unfriendly forum solely at the
prosecutor's whim." Id. at 164.  Because section 666, the statute
under which the defendants are being charged, does not contain a
specific venue provision, the Court must look to "the nature of the
crime alleged and the location of the act or acts constituting it"

to determine the proper venue.  Id. (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)).  The defendants are correct in stating that the Court must look to the criminal acts allegedly committed to determine venue; however, the Supreme Court has rejected a rigid analysis that focuses solely on "the verbs of the statute to determine the nature of the substantive offense." United States v. Rodriquez-Moreno, 526 U.S. 275, 279-80 (1999). Instead, the Supreme Court favored a broader approach by which a court would look at "the conduct elements comprising the crime" to determine venue.  Salinas, 373 F.3d at 164 (citing Rodriquez-Moreno, 526 U.S. at 280.)

When a crime, such as that alleged under section 666, "consists of distinct parts occurring in different places, venue is proper where any part of the crime occurred."  Id. (citing United States v. Lombardo, 241 U.S. 73, 77 (1916).  Furthermore, under 18 U.S.C. §3237(a), the statute that discusses jurisdiction and venue for criminal offenses, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  Applying these principles to section 666, this Court finds that venue is proper in Puerto Rico because the indictment alleges that the

bribes were solicited, offered to be given, and agreed to be accepted in Puerto Rico. While distinct criminal acts were allegedly continued in Florida and Nevada, the Court finds that the indictment sufficiently alleges that certain criminal acts, including the offer and acceptance of the Las Vegas trip by the defendants, the purchase of boxing match tickets by defendant Bravo, the boarding and disembarking of a plane to and from Las Vegas, and the passage of legislation in return for the bribe, all occurred in Puerto Rico. Thus, venue in Puerto Rico is proper and defendants' Motion to Dismiss No. 7 is **DENIED.**

## IX. The Defendants' Motion to Dismiss Puerto Rico Bribery Law Predicates from Travel Act Charges

The defendants move the Court to dismiss the Puerto Rico bribery law predicates from the Travel Act charges and the conspiracy charges for two reasons. (Docket No. 60.) First, both defendants claim that the bribery was committed in Nevada and Florida, and not in Puerto Rico, so the Puerto Rico bribery statutes cannot be a valid predicate for the Travel Act charges. Id. Second, both defendants claim that the Puerto Rico bribery laws do not apply extraterritorially and thus must be dismissed. Id.

The defendants correctly note that the First Circuit Court of Appeals has addressed this very issue in United States v. Woodward, where the court rejected defendant's argument that the government could not use the Massachusetts gratuity statute as a predicate for the Travel Act violations because the defendant received the gratuities in Florida.  149 F.3d 46, 66 (1st Cir. 1998).  The court explicitly noted that "[t]he Travel Act does not require the government to prove that the alleged unlawful activity violates the laws of the state ultimately traveled to, or of the state where money actually changed hands."  Id. (internal quotation marks omitted).  The court reasoned that while defendant, a state legislator from Massachusetts, accepted a bribe that was paid in Florida, a jury could conceivably conclude that the bribe "was paid for the purpose of influencing legislative activities in and affecting Massachusetts."  Id.  The defendants argue that the court's application of the "effects doctrine", which allows a conviction "where the evidence demonstrates 'unlawful activity' in violation of the laws of the state where the effects of the fraudulent scheme are felt, in this case, the state whose citizens are defrauded of their legislator's honest services", has been overruled by Supreme Court cases that have held that venue in a criminal trial is based on "the nature of the crime alleged and the

location of the acts or acts constituting it." (Docket No. 60 at 5-6) (citing <u>Woodward</u>, 149 F.3d at 66; <u>United States v. Cabrales</u>, 524 U.S. 1, 6-7 (1998)).

The defendants' analysis is flawed for two reasons. First, the <u>Cabrales</u> case addresses the issue of proper venue in a criminal prosecution, and therefore has no bearing on the decision of the <u>Woodward</u> case, which remains good law. <u>Cabrales</u>, 524 U.S. at 6-7. Second, defendants' claim that Puerto Rico law should not be used as a predicate to the Travel Act charges because the bribery was not "committed" in Puerto Rico is false. Although many acts of the bribery took place in Nevada and Florida, the bribe was initially offered by defendant Bravo to defendant Martinez in Puerto Rico, and defendant Martinez completed his end of the bargain and voted for legislation in Puerto Rico; thus, the defendants are incorrect in asserting that the bribery was not "committed" in Puerto Rico. (Docket No. 60 at 1) (noting that "[t]he indictment alleges that *nearly all* of the bribery was "committed in Las Vegas, Nevada or Miami, Florida.") (emphasis added). Because the Court finds that bribery was "committed" in Puerto Rico, and that under <u>Woodward</u>, the Puerto Rico bribery predicates for the Travel Act and conspiracy violations are appropriate, it is not necessary to

address the issue of extraterritorial application of Puerto Rico's

bribery laws.  Defendants' Motion to Dismiss No. 8 is **DENIED**.

## X.   The Defendants' Motion for the Government to Elect Dismissal of Counts Pursuant to the Double Jeopardy Clause

Both defendants claim that certain counts in the indictment

are multiplicitous, thereby requiring dismissal of those counts

pursuant to the Double Jeopardy Clause, which protects defendants

against multiple punishments for the same crime.  <u>Whalen v. United

States</u>, 445 U.S. 684, 688 (1980) (internal citations omitted).

Specifically, the defendants maintain that the charges for bribery

under section 666 are lesser included offenses of the Travel Act

charges.  Both defendants also allege that charges for conspiracy

to commit bribery and substantive bribery crimes raise double

jeopardy concerns.  The Sixth Circuit Court of Appeals has

addressed similar challenges from a defendant convicted of

conspiracy and bribery under 18 U.S.C. §§371 and 201, and

violations of the Travel Act, under 18 U.S.C. §1952.  <u>United States

v. Finazzo</u>, 704 F.2d 300, 301 (6th Cir. 1983).  The defendant in

<u>Finazzo</u> contended, just as defendants do in this case, that the

Double Jeopardy Clause prevented punishment (a) for substantive

bribery and conspiracy for bribery and (b) for substantive bribery

and violations of the Travel Act.  <u>Id.</u> at 303.  <u>Finazzo</u> rejected

both of defendant's claims, and following the well articulated
reasoning and analysis of the Sixth Circuit Court of Appeals, this
Court also rejects defendants' claims.

The defendants' contention that the federal program bribery
charge is a lesser included offense of the Travel Act charge is
flawed.  The Finazzo court held that defendant's punishment for
bribery under section 201 and the Travel Act did not violate the
Double Jeopardy Clause because "nothing on the face of the statute
indicates an intention in Congress to prohibit cumulative
punishment for the two offenses", "the Travel Act requires proof of
interstate travel while the bribery statute does not", and the
"bribery offense required that the offense be accomplished, while
the Travel Act requires only unlawful activity in furtherance of
the underlying offense . . .".  Id. at 306-08.  Applying this
analysis to the defendants' claim regarding charges under the
Travel Act and section 666, the Court finds that there is no
violation of the Double Jeopardy Clause because, contrary to the
defendants' assertions, the federal program bribery offense is not
a lesser included offense of the Travel Act.  The well-known test,
accepted by the defendants and the government, for determining
whether two statutory provisions punish the same offense is the
Blockburger test.  (See Docket Nos. 61 at 3 & 72 at 44); see also

Blockburger v. United States, 284 U.S. 299 (1932). Under the test,
the Court must determine whether each of the offenses charged
"requires proof of a fact which the other does not." Blockburger,
284 U.S. at 304 (1932). This Court applies the reasoning of the
Finazzo court and holds that there is no double jeopardy violation
here because (1) the bribery statute does not require proof of
interstate travel, and (2) "the Travel Act does not require that
the intended criminal offense [here, bribery under section 666]
actually be completed, but only that unlawful activity leading
towards the completion of the offense has taken place." Finazzo,
704 F.2d at 307.

The defendants also contend that the Double Jeopardy Clause
precludes conviction for conspiracy to violate section 666 and a
substantive violation of section 666. Again, this Court looks to
the persuasive analysis of the Finazzo court because the facts
mirror those before this Court. While the Finazzo court assessed
a possible double jeopardy violation between section 371
(conspiracy) and section 201 (bribery of public officials and
witnesses), and this Court addresses the possible violation between
section 371 and section 666, the analysis remains essentially the
same. First, the plain language of the statutes "authorize
punishment for each violation and do not place limitations on

cumulative punishment for violation of other sections by a single transaction." Finazzo, 704 F.2d at 304. The Supreme Court has also held that "[t]raditionally the law has considered conspiracy and the completed substantive offense to be separate crimes." Iannelli v. United States, 420 U.S. 770, 777 (1975). Furthermore, other courts have upheld both convictions and indictments charging both a substantive violation of section 666 and conspiracy under section 371. See United States v. Redzic, Nos. 08-2418, 08-3662, 2010 WL 4923272, at *2 (8th Cir. Dec. 6, 2010) (affirming defendant's convictions for bribery in violation of section 666(a)(2) and conspiracy in violation of section 371); United States v. Bohuchot, No. 08-11090, 2010 WL 4457345, at *1 (5th Cir. Nov. 9, 2010) (affirming defendants' convictions of violating and conspiring to violate section 666(a)(1)(B)). Finally, this Court finds that the Blockburger test is satisfied because the conspiracy statute requires an intent to form an agreement and an intent to complete the crime, and the substantive bribery statute requires much more than mere intent to commit the crime. See Finazzo, 704 F.2d at 305; see also United States v. Castro-Davis, 612 F.3d 53, 60 (1st Cir. 2010) ("To support conviction under a conspiracy charge [under 18 U.S.C. §371], the government must show that a defendant had both the intent to agree to commit a crime, and the

intent that the crime be completed."). For the reasons outlined above, defendants' Motion to Dismiss No. 9 is **DENIED**.

## XI. The Defendants' Motion to Dismiss the Aiding and Abetting Charges

Defendants allege that they cannot be charged with aiding and abetting because only one person is alleged to have committed the offense of offering a bribe and only one person is alleged to have committed the crime of accepting a bribe. (Docket No. 62.) The government responds that "defendants' claims reflect a fundamental misunderstanding of 18 U.S.C. §2 and its proper application." (Docket No. 72 at 47.) Other courts have allowed defendants, in cases with facts similar to this one, to be charged with both a substantive violation of the federal programs bribery statute and aiding and abetting. See United States v. Williams, 264 F.3d 561, 567 (5th Cir. 2001) (defendant, a former city councilman of the City of Jackson, Mississippi, "was charged with aiding and abetting others in the corrupt solicitation and acceptance of bribery payments, in violation of 18 U.S.C. §666(a)(1)(B) and §2."); Lipscomb, 299 F.3d at 308 (the government charged Lipscomb, a city councilman, with "specific substantive bribery violations of §666(a)(1)(B)" and charged Richards, the owner of a taxicab company that offered a bribe to Lipscomb, "with aiding and abetting those

offenses."   The government also "charged Richards with bribery violations of §666(a)(2) and charged Lipscomb with aiding and abetting.")   The defendants' arguments are not supported by existing case law and defy the common sense of applying aiding and abetting charges to substantive violations of the law.   They have been appropriately charged with substantive violations of sections 666 and 1952 and aiding and abetting those crimes in violation of 18 U.S.C. §2.   Therefore, the defendants' Motion to Dismiss No. 10 is **DENIED.**

## XII. Defendant Martinez's Motion to Dismiss Count Six of the Indictment

Defendant Martinez moves this Court to dismiss the charge for obstruction of justice as being internally inconsistent and failing to provide him with sufficient notice of this charge.   (Docket No. 63.)   The obstruction of justice charge clearly articulates that defendant Martinez is being charged with approaching Person B and instructing Person B to tell the FBI that Person B "had prepared the bills that became Senate Project [sic] 410 and Senate Project [sic] 471" even though defendant Martinez knew this was not true.   (Docket No. 1 at ¶ 88.)   Defendant Martinez claims that the indictment's earlier reference to the fact that "defendant Martinez instructed Person B to reformat the bills" makes this charge

internally inconsistent.  As the government argues, however, the words "prepared" and "reformatted" have very distinct, separate meanings.  (Docket No. 72 at 49.)  In reviewing the indictment as a whole, it is clear to this Court, as it should be to defendant Martinez, that the allegations are as follows: defendant Bravo drafted Senate Bill 410 and Senate Bill 471; defendant Martinez received these drafts and instructed Person B to "reformat" them to disguise the fact that the bills were prepared by defendant Bravo; defendant Martinez, after learning of the investigation against him, then instructed Person B to lie to federal investigators and state that Person B himself had prepared the legislation (rather than defendant Bravo).  (See Docket No. 72 at 50.)  If defendant Martinez wishes to raise any factual arguments regarding whether or not Person B "prepared" or "reformatted" the legislation, he is free to do so at trial.  At this stage of the proceeding, however, Martinez's Motion to Dismiss No. 11 is **DENIED**.

## CONCLUSION

For the reasons discussed above, defendant Bravo's motion for a Kastigar-like hearing is **GRANTED** and all other defendants' motions to dismiss are **DENIED**.

The Clerk will remove the restriction placed on docket numbers 109 and 113, blocking out the social security numbers.

The Kastigan hearing on defendant Bravo's motion is scheduled for **January 10, 2011 at 9:00 a.m.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 23, 2010.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
United States District Judge