```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>          **v.**<br><br>JUAN BRAVO-FERNANDEZ;<br>HECTOR MARTINEZ-MALDONADO,<br><br>**Defendant**s. | **Criminal No.** 10-232 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

   The First Circuit Court of Appeals has vacated defendants Bravo and Martinez's 18 U.S.C. § 666 convictions and remanded the case for further proceedings. United States v. Fernandez, 722 F. 3d 1, 39 (1st Cir. 2013). Explaining that the jury instructions permitted the jury to convict under a legally erroneous gratuity theory, the court of appeals indicated that "[t]he government may not pursue a conviction on that ground if Defendants are retried." Id. at 28. Defendants now contend that despite the theoretical availability of bribery as the viable theory under which a second section 666 conviction could be pursued, "the record makes clear that the jury rejected that any bribery occurred in this case through its acquittals on the conspiracy and Travel Act charges." (Docket No. 652 at p. 1.) They argue that double jeopardy prevents the government from relitigating federal bribery, and that acquittals on the section 666 charges are warranted. Because the

Criminal No. 10-232 (FAB)                                             2

defendants fail to meet their burden under the collateral estoppel doctrine, the Court **DENIES** their motions.

## I.   Issue Preclusion/Collateral Estoppel Standard

The "collateral estoppel" or "issue preclusion" prong of the Double Jeopardy Clause of the Fifth Amendment "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." Fernandez, 722 F.3d at 33 (citing Yeager v. United States, 557 U.S. 110, 117-18 (2009); Ashe v. Swenson, 397 U.S. 436, 443-44 (1970); and United States v. Orrego-Martinez, 575 F.3d 1, 6 (1st Cir. 2009)).  "The burden of demonstrating that the issue was actually decided in the first prosecution rests upon the defendant."  United States v. Lanoue, 137 F.3d 656, 662 (1st Cir. 1998); Dowling v. United States, 493 U.S. 342, 350 (U.S. 1990).

Although a defendant need not satisfy "a standard of absolute certainty," he or she carries the burden of proving "unequivocally" that the jury verdict necessarily included an implicit factual finding in the defendant's favor. See United States v. Marino, 200 F.3d 6, 10 (1st Cir. 1999) (citing United States v. Aguilar-Aranceta, 957 F.2d 18, 25 (1st Cir. 1992) (abrogated by Yeager on other grounds)). To decipher what a jury has necessarily decided, courts should "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have

grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." <u>Yeager</u>, 557 U.S. at 119-20. "The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." <u>Id.</u> (citing <u>Ashe</u>, 397 U.S. at 444). The First Circuit Court of Appeals has explicitly held that "[w]here it is impossible to determine whether the particular issue was previously resolved in a defendant's favor, preclusive effect must be denied." <u>Lanoue</u>, 137 F.3d at 662.

**II. The Parties' Arguments**

Defendants point to the jury's verdicts on counts I and II[1] to argue that "the jury made repeated findings of fact that demonstrate that no bribery occurred in this case." (Docket No. 652 at p. 3); (Docket No. 645 at p. 2. n. 2.) ("The [a]cquittal on the conspiracy count means there was no agreement to commit bribery, and the acquittal on the Travel Act counts predicated on Puerto Rico bribery charges also means no bribery occurred. The government cannot relitigate those facts."). They claim that the

---

[1] Count I of the Indictment charged defendants with violating 18 U.S.C. § 371 by conspiring to: (a) commit federal program bribery, and (b) travel in interstate commerce in aid of racketeering. (Docket No. 1 at pp. 5-6.) Count II charged defendants with violating 18 U.S.C. § 1952(a)(3)(A) by traveling in interstate commerce with the intent to "[p]romote, establish, carry on, and facilitate the promotion, establishment, and carrying on, of an unlawful activity," specifically (a) federal program bribery in violation of § 666, and (b) bribery in violation of P.R. Laws Ann., tit. 33, §§ 4360 and 4363. (Docket No. 1 at pp. 19-20.)

Criminal No. 10-232 (FAB)                                               4

jury unanimously rejected the notion that there was a conspiracy to offer or receive things of value in violation of section 666, and they attempt to make factual deductions to arrive at the conclusion that the jury's finding must reflect a rejection of both the gratuity and bribery theories of section 666 liability.  (Docket No. 652 at pp. 3-5.)  Similarly, defendants claim that it would have been impossible for the jury not to have found facts to satisfy certain elements of the Travel Act charges, and thus they aver that the jury must have "rejected the notion that either defendant engaged in conduct that would violate § 666 . . . ." Id. at pp. 6-7.

**III. Analysis**

There is no question that federal bribery was an issue before the jury in the first trial.  On the verdict form, the jury explicitly convicted defendant Bravo of federal program bribery in count IV, and defendant Martinez of federal program bribery in

Criminal No. 10-232 (FAB)                                               5
_____

count V.[2]  (Docket No. 438 at p. 5.)   That unanimous finding necessarily means that the jury found all elements of section 666

---

[2] Defendants first seek for the Court to avoid altogether the consideration of counts IV and V, claiming that "a vacated conviction is as meaningless as a hung count," and "[a]s a nullity, the Court cannot give a vacated conviction any continuing effect." (Docket No. 652 at p. 8.)  As a threshold matter, defendants provide no convincing authority that the Court must decide their double jeopardy claim solely by analyzing the jury's findings on counts I and II and without referencing the jury's findings on counts IV and V.  (See Docket No. 652 at pp. 7-8; Docket No. 664 at p. 5.)  In this case, defendants' conspiracy convictions in counts IV and V were vacated for legal error, and it is precisely the jury's findings of fact "on all counts, including the special verdicts, [] viewed in their entirety" that need to be analyzed in order to determine what the jury necessarily decided. Accordingly, the Court will consider the jury's findings in counts IV and V.

Criminal No. 10-232 (FAB)                                                6

federal program bribery to be proven beyond a reasonable doubt.[3] The First Circuit Court of Appeals vacated those convictions, however, due to legal error; the court of appeals held that the jurors were permitted to convict under an impermissible gratuity theory as well as a bribery theory.  Fernandez, 722 F.3d at 26–27.  In arguing that "the *only* way that the jury's verdicts can be interpreted is as a rejection of a bribery theory," (Docket 672 at p. 1), defendants essentially ask the Court to find from counts I and II that the jury convicted defendants of counts IV and V on a

---

[3] Accordingly, the jury unanimously agreed that defendant Bravo gave, offered, or agreed to give any thing of value to any person; that defendant Bravo did so corruptly with the intent to influence or reward an agent of the Puerto Rico government in connection with any business, transaction, or series of transactions of the Puerto Rico government; that this business, transaction, or series of transactions involved any thing of a value of $5,000 or more; and that the Puerto Rico government, in a one-year period preceding May 15, 2005, or during the one-year period following May 15, 2005, received benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan, guarantee, insurance or other assistance.  (Docket No. 433 at p. 29.)

Similarly, the jury unanimously agreed that defendant Martinez was an agent of the Commonwealth of Puerto Rico government whose duties included those of an elected Senator of the Commonwealth of Puerto Rico, as charged; that defendant Martinez solicited, demanded, accepted or agreed to accept any thing of value from another person; that defendant Martinez did so corruptly with the intent to be influenced or rewarded in connection with some business, transaction, or series of transactions of the Puerto Rico government; that this business transaction or series of transactions involved any thing of a value of $5,000 or more; and that the Puerto Rico government, in a one-year period preceding May 15, 2005, or during the one-year period following May 15, 2005, received benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan, guarantee, insurance or other assistance.  (Docket No. 433 at pp. 33–34.)

Criminal No. 10-232 (FAB)                                                    7

gratuity theory alone.  The Court's task now is to determine whether the issue of section 666 federal bribery under the bribery theory was indeed decided in the defendants' favor.  Upon review of the record and in light of the Fernandez opinion, the Court cannot find a single, definitive answer.  The inherent uncertainty involved in arriving at that conclusion prevents defendants from meeting their burden and precludes the Court from granting defendants' motion.

To begin, the Court cannot accept defendants' argument that when the jury checked "no" as to the federal program bribery predicates for liability in counts I and II, "that was a unanimous acquittal" that may be interpreted as such in a double jeopardy issue preclusion analysis.  (Docket No. 670 at p. 2.)  The government interprets the same language and check marks on the verdict form to be "non-findings — i.e., guilty verdicts in which the jury merely did not unanimously agree on a particular supporting basis for that verdict."  (Docket 668 at p. 5.)  Reading the check marks as the jury's "unambiguous[][4] stat[ement] on the verdict form that Bravo did not conspire to violate § 666," the First Circuit Court of Appeals noted, "the jury did render a conspiracy judgment with respect to Section 666, rejecting federal bribery as a direct object of the conspiracy."  Fernandez, 722 F.3d

---

[4] The Court must note defendant Bravo's misleading and erroneous citation to the First Circuit Court of Appeals' term "unambiguous" as "unanimous."  (See Docket No. 672 at p. 2.)

Criminal No. 10-232 (FAB)                                                    8

at 34.  Those statements tend to weigh in favor of the defendants' interpretation of the verdict form.  The First Circuit Court of Appeals' interpretation of any unanimity reflected by the check marks, however, better supports the government's view.  See Fernandez, 722 F. 3d at 34-35 ("In other words, although the jury was unanimous in finding that Martinez was guilty of conspiring to do something illegal, **they were not unanimous in their view of what the illegality was**.").  Pursuant to that reasoning, the "no" check marks on the federal program bribery predicates in counts I and II could indicate the jury did not unanimously find section 666 bribery to be the object of the conspiracies in count I and the underlying racketeering of travel in count II.  That is not equivalent to stating that the jury unanimously found that section 666 bribery was not the object of the conspiracy or predicate of the travel, or even further, as defendants argue, that the jury unanimously rejected that bribery occurred at all.  The confusing format of the verdict form does not preclude the possibility that the jury's check marks could represent hung counts — not acquittals — that Yeager would preclude the Court from reviewing in an issue preclusion double jeopardy analysis.  There is an alternate interpretation to defendants' interpretation of the verdict form that obscures the conclusion.  Given the further difficulty of conclusively discerning what facts and theories

underlaid the jury's check marks, the Court is not convinced that issue preclusion is warranted.

Even if the jury's "no" check marks in counts I and II were interpreted to be unanimous findings of acquittal, the Court is not persuaded that it can glean the underlying facts and theory used to make those findings.  Without conclusive proof as to what factors were at play in the jury room, the Court disagrees that the jury's findings on the verdict form signify an "unequivocal" rejection of the bribery theory.  Pointing to evidence presented at trial, defendants argue there is no question that an agreement existed between Bravo and Martinez, overt acts were taken, and that interstate travel occurred; they thus contend that <u>the only way</u> the jury could have checked "no" next to the section 666 predicates in counts I and II is if the jury did not find all elements of a section 666 claim itself to be met.  (Docket No. 652 at pp. 3-7.)  Taking counts I and II together in isolation, defendants' reading may be plausible.  If the jury's "no" check marks next to the federal program bribery object of conspiracy in count I and the federal program bribery predicate of the Travel Act in count II <u>truly</u> <u>indicated</u> a total rejection of bribery, however, it seems to the Court that acquittals as to the substantive bribery counts IV

Criminal No. 10-232 (FAB)                                           10

and V necessarily would have followed.[5]  See United States v. Aguilar-Aranceta, 957 F.2d 18, 24 (1st Cir. 1992) (abrogated on other grounds) (assuming that the jury acted rationally and concluding that because knowledge was an element of one count, a rational jury "could not have been so inconsistent as to find 'no knowledge' as to one count[] and 'knowledge' as to the other"). The fact that the jury unanimously found that all elements of the substantive section 666 charge <u>were met</u> when they convicted defendants of counts IV and V would seem to suggest, contrary to defendants' theory, that at least one *other* element of the conspiracies in count I and the Travel Act in Count II was not satisfied.  The crux of defendants' argument — that a rational jury <u>could not</u> have found the absence of an agreement, an overt act, or interstate travel — supports a competing interpretation of the jury's findings: that the jury acted irrationally and the verdict

---

[5] Defendants appear to disagree.  They initially argue that the jury's check marks in counts I and II reflect "a rejection of both [the bribery and gratuity] theories," (Docket No. 652 at p. 3), but later claim that a rational jury "could conclude a defendant had not committed bribery . . . while at the same time convicting the same defendant under a gratuity theory under Section 666." (Docket No. 652 at p. 8.).  Thus, they aver, "a conclusion that the jury found a gratuity and not bribery is the logical way to reconcile the verdict."  Id. at 8.

   The Court cannot subscribe to defendants' view that the jury convicted only when it was given the "reward" language in count III and acquitted every time it was told it had to find "in exchange for" bribery, thus indicating that the gratuity instructions were decisive.  All jury instructions were considered as a whole, and instructions relevant to counts I and II directed the jury to consider the erroneous section 666 instructions.

Criminal No. 10-232 (FAB)                                              11

simply was inconsistent.  United States v. Powell, 469 U.S. 57, 69 (1984) ("It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the [substantive section 666] offense and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.").  As the Supreme Court has enlightened, "issue preclusion is predicated on the assumption that the jury acted rationally," Yeager v. United States, 557 U.S. 110, 124 (2009), and "[the] most that can be said [of inconsistent verdicts] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions . . . ."  Dunn v. United States, 284 U.S. 390, 393 (1932).  Once a jury reaches inconsistent results, "principles of collateral estoppel — which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict — are no longer useful."  Powell, 469 U.S. at 68 (1984) (emphasis added).  The possibility that the jury acted irrationally and issued inconsistent verdicts in this case is not, as defendants would have the Court believe, "quite beside the point," (Docket No. 672 at p. 3); rather, it is a competing theory whose mere existence, coupled with the ambiguous jury instructions,[6] is fatal

---

[6] "In order to demonstrate a unanimous vote, the face of a verdict sheet may not alone be sufficient . . . . Jury instructions are part of that analysis."  United States v. Merlino, 310 F.3d 137, 142 (3d Cir. 2002) (citing Marino, 200 F.3d at 8-11 in favor of rejecting defendants' collateral estoppel arguments because "their jury charge contained considerable ambiguity").

Criminal No. 10-232 (FAB)                                       12

to defendants' issue preclusion claim.  See Marino, 200 F.3d at 11 (affirming a district court's denial of collateral estoppel because of ambiguous jury instructions and the apparent irrationality of the jury's verdicts) (internal citations omitted).

     Given the legal errors in the jury instructions, the Court is unpersuaded that any definitive conclusion about the underlying facts or theory can be gleaned from the check marks in counts I or II.  The First Circuit Court of Appeals has ruled that the jury instructions regarding section 666 were contradictory and legally erroneous:

> While the language in Jury Instruction 22 correctly states the requirements for a bribery conviction, it was not sufficient to offset the flatly contrary language in Jury Instructions 20 and 21.  This is particularly so because the gratuities theory was offered in the instructions on the § 666 counts themselves, whereas the correct bribery language was in a subsequent global instruction that applied to both the Puerto Rico and federal bribery counts.

Fernandez, 722 F.3d at 20.  It is clear that certain paragraphs within those jury instructions "had no place in the § 666 instructions," id. at 26, and that the jury instructions regarding bribery in this case were not relatively straightforward; rather, "their jury charge contained considerable ambiguity."  See Marino, 200 F.3d at 10; see also Merlino, 310 F.3d at 142 ("Because, however, of the supplemental instructions given by the District Court, [the jury's] check marks are ambiguous.").  Given that the jury instructions for the conspiracy charge required the jury to

Criminal No. 10-232 (FAB)                                       13

find beyond a reasonable doubt that an agreement existed "to commit bribery concerning federal funds, pursuant to 18 U.S.C. § 666," (Docket No. 433 at p. 18), and that the jury instructions for the Travel Act charge directed the jury to search for the elements of section 666 "elsewhere in these instructions," (Docket No. 433 at pp. 21–22), the Court cannot rule out the likely possibility that the jury considered the erroneous and "flatly contrary" jury instructions #20 and #21 in deciding counts I and II.  Considering the jury instructions and verdict form, as well as all circumstances from the proceeding, the Court is unable to glean whether the bribery or gratuity theory was selected as the basis for analyzing counts I and II.  It agrees with the government that defendants present a convoluted approach of "meander[ing] through competing interpretations of the jury's seemingly inconsistent verdict[7] in an effort to patch together a conclusion that requires the Court to act as an independent factfinder," (Docket No. 663 at p. 3), and it finds defendants' theory to impermissibly require substantial "speculation into what transpired in the jury room." See Yeager, 557 U.S. at 122.  Neither the Court nor the parties have an ability to seek conclusive proof as to what factor was at

---

[7] United States v. Standefer, 610 F.2d 1076, 1095 (3d Cir. 1979) ("The precise determination of what a jury decided and why can be particularly difficult . . . . In jury cases[,] verdicts frequently are internally inconsistent. It is for this reason that the law long ago abandoned the search for absolute consistency in jury verdicts, however desirable such a result might be in the abstract.") (citing Dunn, 284 U.S. at 393).

Criminal No. 10-232 (FAB)                                              14

play in deliberation, and defendants' attempt to discern underlying factual determinations in the jury's verdict "is not reasoned analysis; it is guesswork."  See Yeager, 557 U.S. at 121-22.  The lack of certainty as to what findings were made by the jury in this case precludes the Court from applying the collateral estoppel doctrine to the counts involving section 666.  As the First Circuit Court of Appeals noted:

> While normally we presume juries follow their instructions, the more tenebrous those instructions, the more difficult it may be for defendants to demonstrate unequivocally on appeal that the jury necessarily predicated its verdict on a particular finding.  So it is here, since we cannot determine with any reasonable degree of reliability that the jury interpreted the pertinent aspects of its charge in the manner asserted by [defendants].

Marino, 200 F.3d at 10.

Finally, although the First Circuit Court of Appeals did not explicitly conclude that the theory upon which the jury convicted defendants of section 666 is unclear, its reasoning, coupled with its ultimate decision to vacate and remand the defendants, appears to support such a finding.  See Fernandez, 722 F.3d at 20 ("The evidence showed that Martinez supported the Senate Projects after the Las Vegas trip — he voted in support of both bills within a week of returning — **which is consistent with a quid pro quo, and therefore with a bribery theory**.") (bolded emphasis added); Id. ("However, he first took actions in support of Senate Projects 410 and 471 — such as submitting the bills to the Senate — weeks or

Criminal No. 10-232 (FAB)                                        15

months <u>before</u> the trip to Las Vegas, **which is consistent with a gratuity theory**.") (bolded emphasis added).  Tasked with determining "whether the judgment . . . should be vacated and the case remanded for further proceedings," the First Circuit Court of Appeals invoked the double jeopardy issue preclusion analysis to determine the fate of Bravo's conspiracy conviction in count I.  It refrained, however, from engaging in that analysis as to the section 666 charges in counts IV or V.  **This is so, despite the defendants' explicit argument before the First Circuit Court of Appeals that "[t]he jury <u>rejected</u> the government's theory of bribery**," (Court of Appeals Case No. 12-1290, Document No. 00116373686, p. 51.), and "the logical conclusion of his argument" also implicated the collateral estoppel prong of the double jeopardy clause.  <u>See</u> <u>Fernandez</u>, 722 F.3d at 33 n. 25.

**IV. Conclusion**

Defendants have not met their burden of demonstrating that double jeopardy collateral estoppel precludes the government from retrying them on the section 666 charges. Given the ambiguities in the jury verdict form and the jury instructions, as well as the possibility that the jury acted irrationally in issuing an inconsistent verdict, it is impossible to determine whether the jury necessarily decided the issue of bribery in defendants' favor, and preclusive effect must be denied.  <u>See</u> <u>Lanoue</u>, 137 F.3d at 662. Accordingly, the Court will not grant defendants' motion.  <u>See</u>

Aguilar-Aranceta, 957 F.2d at 25 ("Only an **unequivocal** showing that the issue sought to be foreclosed by the defendant from subsequent reconsideration **was definitely, and necessarily decided** by a jury in a final judgment, and in the defendant's favor, will convince us to collaterally estop the government from relitigating that issue in the second trial.") (emphasis added).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 23, 2013.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
United States District Judge