UNITED STATES OF AMERICA,

    **Plaintiff,**

          **v.**                  **Criminal No.** 10-232 (FAB)

JUAN BRAVO-FERNANDEZ [1],
HECTOR MARTINEZ-MALDONADO [2],

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Juan Bravo-Fernandez's ("Bravo")'s motion for severance, Docket No. 729, and defendant Hector Martinez-Maldonado's ("Martinez")'s motion for severance, Docket No. 731. For the reasons set forth below, the Court **DENIES** without prejudice both motions for severance. Moreover, the Court **ORDERS** the government to disclose any statements made by defendants that the government intends to introduce into evidence at trial.

**I.    BACKGROUND**

On June 22, 2010, a federal grand jury returned an indictment charging defendant Bravo and defendant Martinez with, among other criminal offenses, federal program bribery in violation of 18

U.S.C. § 666(a)(2) and 18 U.S.C. § 666(a)(1)(B) ("section 666").[1]

(Docket No. 1 at ¶¶ 81, 85.)   Following a trial that lasted approximately two weeks, the jury convicted defendant Bravo of violating 18 U.S.C. § 666(a)(2) as charged in count four of the indictment, and convicted defendant Martinez of violating 18 U.S.C. § 666(a)(1)(B) as charged in count five of the indictment.[2]   See Docket No. 438.

---

[1] 18 U.S.C. 666(a)(1)(B) & (2) states in pertinent part: "Whoever, if the circumstance described in subsection (b) of this section exists—[. . . ] (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $ 5,000 or more; or (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $ 5,000 or more."

[2] The jury also convicted defendants of conspiracy as charged in count one, and defendant Bravo of interstate travel in aid of racketeering, as charged in count two.   See Docket No. 438.   The Court granted defendant Bravo's motion for acquittal regarding the travel act offense charged in count two.   United States v. Bravo-Fernandez, 828 F. Supp. 2d 441, 449 (D.P.R. 2011) (Besosa, J.). The jury acquitted defendant Martinez of the charges alleged in counts three and six—interstate travel in aid of racketeering and obstruction of justice, respectively.   Id.   The First Circuit Court of Appeals reversed defendant Bravo's conspiracy conviction. United States v. Fernandez, 722 F.3d 1, *39 (1st Cir. 2013).   The only counts now pending against defendants are the federal program bribery charges alleged in counts four and five.

The First Circuit Court of Appeals ultimately vacated the
convictions of both defendants for violating section 666, and
remanded the case for further proceedings.  United States v.
Fernandez, 722 F. 3d 1, 39 (1st Cir. 2013).  The court of appeals
held that the Court's jury instructions were erroneous because
they permitted the jury to convict pursuant to a gratuity theory,
stating that "[t]he government may not pursue a conviction on that
ground [i.e., a gratuity theory] if Defendants are retried."  Id.
at p. 28.  In sum, defendants cannot be convicted of federal
program bribery pursuant to a gratuity theory because "the true
target of § 666 are bribes, not gratuities."  Id. at 26.

The government now intends to retry defendants on the
standalone section 666 federal program bribery allegations set
forth in counts four and five.[3]  Defendants make overlapping
arguments in support of their respective motions for severance.

---

[3] The Court granted in part defendants' motion to disclose the
grand jury instructions.  See Docket Nos. 736 & 791.  After an in
camera review of the jury instructions, the Court denied
defendants' motion to dismiss the indictment for grand jury abuse
and to avoid a constructive amendment.  See Docket Nos. 735 & 806.
The Court also denied defendants' motion to dismiss counts four
and five for failure to allege an offense.  (Docket No. 814.)
There are eight remaining pre-trial motions, including defendants'
motions for severance.  The defendants have filed a Petition for
a Writ of Mandamus requesting that the First Circuit Court of
Appeals dismiss the indictment without prejudice.  See Docket
No. 809-2.

Defendant Bravo contends that severance is warranted because: (1) former senator Jorge De Castro-Font's anticipated testimony concerning defendant Martinez's statements inculpating defendant Bravo would violate defendant Bravo's Sixth Amendment right to confrontation, and (2) the government's introduction into evidence of defendant Martinez's 1999 grand jury testimony relating to the criminal investigation of Senator Freddie Valentin would be unfairly prejudicial. Defendant Martinez, for his part, argues that severance is warranted because: (1) evidence of defendant Bravo's payments to De Castro-Font in exchange for the latter's support for certain legislation would cause spillover prejudice to defendant Martinez, and (2) De Castro-Font's anticipated testimony concerning the statements of defendant Bravo that incriminate defendant Martinez would violate defendant Martinez's Sixth Amendment right to confrontation. For the reasons explained below, the Court denies defendants' motions for severance without prejudice.

## II.  Severance Standard

"As a rule, persons who are indicted together should be tried together." United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir.

1993).[4]  Joint trials prevent inconsistent verdicts and conserve judicial resources.  Id.  Rule 14 of the Federal Rules of Criminal Procedure, however, provides that the Court may sever trials "[i]f the joinder of offenses or defendants in an indictment [. . .] appears to prejudice a defendant or the government."  A court should grant severance only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 638 (1993).  District courts possess "considerable latitude" regarding severance motions, and "will be overturned only if that wide discretion is plainly abused."  United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993) (citation omitted).

## III. Discussion

For the reasons addressed more thoroughly below, the Court is not persuaded that severance is warranted pursuant to Federal Rule of Criminal Procedure 14.

---

[4] Rule 8(b) of the Federal Rules of Criminal Procedure provides: "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count."

## A.    Alleged Evidentiary Spillover Prejudice

According to defendant Bravo, severance is justified because defendant Martinez's 1999 grand jury testimony relating to the criminal investigation of former Senator Freddie Valentin is unfairly prejudicial to defendant Bravo.[5]   (Docket No. 729 at pp. 7-10.)   In joint trials, the risk of "'spillover' may arise where evidence that is not admissible or should not be considered against one defendant on his or her own is admitted against a co-defendant."   United States v. Cancel-Lorenzana, 28 F. Supp. 3d 138, 140 (D.P.R. 2014) (Besosa, J.) Prejudice resulting from spillover evidence is a possible basis for severance pursuant to Federal Rule of Criminal Procedure 14(a).   To prevail on a spillover claim, however, "a defendant must prove prejudice so pervasive that a miscarriage of justice looms."   Id. (quoting United States v. Pierro, 32 F.3d 661, 615 (1st Cir. 1994)). Moreover, a defendant asserting evidentiary spillover prejudice "'must overcome the dual presumptions that a jury will capably sort through the evidence and will follow limiting instructions

---

[5] During the 2011 trial, the Court granted the government's motion to admit defendant Martinez's 1999 grand jury testimony as 404(b) evidence to demonstrate "Martinez's intent to impede a federal investigation, the same crime with which he [was] charged in [the 2011 trial]."   See Docket No 168 at p. 7; Docket No. 323 at p. 20. The government and defendants agreed to have a short stipulation read to the jury.   See Docket No. 414.

from the court' to consider each defendant's guilt separately."
Cancel-Lorenzana, 28 F. Supp. 3d at 140 (quoting United States v.
Turner, 93 F.3d 276, 284 (7th Cir. 1996)).

        Defendant Bravo's argument is premature and based on
speculation.  The government has not moved to admit, and the Court
has made no ruling as to the admissibility of, defendant Martinez's
1999 grand jury testimony.    Indeed, defendant Bravo states
correctly that in determining the prejudicial effect of a joint
trial, the prime consideration is "whether the court may reasonably
expect the jury to collate and appraise the independent evidence
against each defendant."  Docket No. 729 at p. 8 (citing United
States v. Perkins, 926 F.2d 1271, 1281 (1st Cir. 1991)).  The Court
cannot assess whether the jury will "collate and appraise the
independent evidence" because the admission of the evidence in
dispute, the 1999 grand jury testimony of defendant Martinez, is
not a foregone conclusion.    Severance based on potentially
prejudicial evidence the government has not attempted to introduce

at trial is an insufficient basis to sever defendants' joint trial.[6]

Defendant Martinez, like defendant Bravo, seeks severance on the basis of prejudice caused by spillover evidence. Defendant Martinez argues that severance is required pursuant to Federal Rule of Criminal Procedure 14 because evidence of defendant Bravo's payments to De Castro-Font threatens to "rub off" and spillover to defendant Martinez.[7]   (Docket No. 731 at p. 6.) According to defendant Martinez, this evidence is pervasively prejudicial and warrants severance because it may cause the jury

---

[6] The Court emphasizes that prejudice, in and of itself, is not a basis for severance.  United States v. Rose, 914 F. Supp. 2d 15, 36 (D.Mass. 2012) ('"Garden-variety evidentiary spillover common to any joint trial' is not a basis to sever trials.")  A defendant seeking severance must make "a strong showing of evident prejudice."  United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993).  In joint trials, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance."  United States v. Rivera, 89 F. Supp. 3d 376, 400 (E.D.N.Y. 2015) (citation omitted).

[7] Defendant Martinez also argues that evidence of defendant Bravo's efforts to undermine business competitors in the years following the conduct charged in the indictment would be unfairly prejudicial because it "might influence the jury's assessment of whether Mr. Martinez received a bribe from Mr. Bravo."  (Docket No. 731 at 10.)  The Court rejects this argument for the same reasons it concludes that evidence of defendant Bravo's payments to De Castro-Font does not warrant severance.

to conclude that because De Castro-Font was bribed, defendant
Martinez was also bribed.  (Docket No. 731 at p. 5.)[8]

All relevant evidence introduced at trial is prejudicial
on some level; this requires the Court to decide "if its probative
value is substantially outweighed by danger of [. . .] unfair
prejudice."  Fed. R. Evid. 403.  Severance based on spillover
evidence is necessary only when defendants establish "pervasive
prejudice," not "more than just a better chance of acquittal at a
separate trial."  Cancel Lorenzana, 28 F. Supp. 3d at 141 (quoting
United States v. Boylan, 898 F.2d 230, 246 (1st Cir. 1990).  The
Court is not convinced that evidence regarding bribes paid to De
Castro-Font by defendant Bravo is so pervasively prejudicial to
defendant Martinez that defendants' impending joint trial must be

_____

[8] According to defendant Martinez, the jury's "failure to arrive
at a consistent verdict" demonstrated a "struggle to follow"
limiting instructions.  (Docket No. 731 at p. 8) (Docket No. 756
at pp. 2-3.)   The proposition that inconsistent verdicts
demonstrate flawed or insufficient limiting instructions is
misguided.  On the contrary, the First Circuit Court of Appeals
held that an inconsistent and "discriminating verdict shows that
the jury was able to compartmentalize evidence and apply it to
each defendant, and gives us 'no basis to suppose that jurors
disregarded the trial judge's admonitions and departed on a frolic
of their own."  United States v. Pierro, 32 F.3d 611, 616 (1st
Cir. 1994).   The final jury instructions, not the limiting
instructions provided to the jury throughout the trial, prompted
the First Circuit Court of Appeals to conclude that section 666
"does not criminalize gratuities."  United States v. Fernandez,
722 F.3d 1, 6 (1st Cir. 2013).

severed.  This is particularly so because a limiting instruction will mitigate the risk of unfair prejudice to defendant Martinez. See United States v. Richardson, 515 F.3d 74, 83 (1st Cir. 2088) ("[W]e note that the district judge limited any prejudice that might result from admission of other crime evidence by instructing the jury to consider the evidence separately as to each count); United States v. Baltas, 236 F.3d 27, 34 (1st Cir. 2001) (appropriate limiting instruction provides adequate safeguard against evidentiary spillover prejudice).

        Defendant Martinez cites numerous cases that support the broad proposition that severance is warranted when spillover evidence results in pervasive prejudice.  See United States v. Sampol, 636 F.2d 621 (1st Cir. 1980) (holding that district court erred in failing to sever a three-defendant trial where two defendants, but not the third, were charged with the bombing murder of two victims because "[i]n cases when there is a gross disparity in the quantity and venality of the testimony against the respective joint defendants it is fair to inquire whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and limited admissibility."); United States v. Mardian, 546 F.2d 973 (D.C. Cir. 1976) (overturning the conviction of a defendant who had been tried jointly with three principal members of the

Watergate conspiracy, all of whom played much more substantial roles in the crime over longer periods of time); United States v. Kelly, 349 F.2d 720 (2nd Cir. 1965) (holding that the district court erred in failing to sever the trial of three co-defendants, only two of which "must have stamped in the eyes of the jurors as unscrupulous swindlers of the first rank.")[9]

These cases are inapposite. While severance may be appropriate when there is a stark disparity between the charges, quantity and strength of the evidence among the defendants, defendant Bravo and defendant Martinez are each charged with committing federal program bribery in violation of 18 U.S.C. § 666(a)(2) and 18 U.S.C. § 666(a)(1)(B). Indeed, there is no vast disparity in the number and nature of the criminal offenses charged against defendants, and defendant Martinez does not assert that the evidence against defendant Bravo is so much more incriminating and abundant that severance is necessary to cure

---

[9] Additional cases defendant Martinez cites demonstrate that severance is justified only when alleged spillover evidence is pervasively prejudicial, not simply prejudicial. In Pierro, a co-defendant's "unsavory" testimony did not "prejudice appellant above and beyond the quantum of prejudice that typifies virtually any multi-defendant trial – and that sort of prejudice clearly does not justify a severance." 35 F.3d at 615. In United States v. Sotomayor-Vazquez, a defendant's fabrication and recantation was not so pervasively prejudicial that limiting instructions could not "account for the unusual situation; instructions that we must presume were heeded by the jury." 249 F.3d 1, 12 (1st Cir. 2001).

evidentiary spillover prejudice. In sum, the Court is not persuaded that either defendant will be unfairly prejudiced by any spillover evidence unless the trial is severed. Consequently, insofar as each defendant has moved for a severance on the ground of spillover prejudice, the motions are denied.

**B.    Anticipated <u>Bruton</u> Statements**

Both defendants seek severance pursuant to the Confrontation Clause of the Sixth Amendment, which guarantees a criminal defendant the right "to be confronted with the witnesses against him." The right to confrontation implies the right to conduct a cross-examination of the witness. <u>Pointer v. Texas</u>, 380 U.S. 400 (1965). Out-of-court statements are admissible against criminal defendants in very limited circumstances. <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). At a joint trial of more than one defendant, the government cannot elicit "out-of-court statements of a non-testifying defendant, even if admissible against the declarant, [. . .] against a jointly tried codefendant unless otherwise independently admissible against the codefendant." <u>Lily v. Virginia</u>, 527 U.S. 116, 124 (1999). In essence, a co-defendant's out-of-court statements are admissible at a joint trial if the Court "instructs the jury not to consider the statements against any defendant other than the declarant, and the statements are not so powerfully inculpating of the other

defendants that there would be substantial doubt as to whether the jury could abide by a limiting instruction." United States v. Molina, 407 F.3d 511, 519 (1st Cir. 2005) (citation omitted). In Bruton v. United States, the Supreme Court overturned a co-defendant's conviction "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of [co-defendant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment."[10] Id. Defendant Martinez and defendant Bravo both argue that statements made by each other, if introduced at trial, contravene Confrontation Clause protections articulated in Bruton.

Defendants argue that testimony from potential witness De Castro-Font may violate defendants' Sixth Amendment rights.[11] Defendant Bravo anticipates that should De Castro-Font testify at

---

[10] The Advisory Committee Note for Rule 14 of the Federal Rules of Criminal Procedure refers to the same Confrontation Clause issue encountered in Bruton. 391 U.S. 123 (1968). The Advisory Committee Note provides that: "A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice."

[11] De Castro-Font did not testify at the 2011 trial.

trial, the government may elicit out-of-court statements made by
defendant Martinez that inculpate defendant Bravo.[12]    (Docket
No. 729 at p. 6.)  Conversely, defendant Martinez argues that the
government may introduce inculpatory statements made by defendant
Bravo through the testimony of De Castro-Font.[13]    (Docket No. 731
at pp. 9-18.)  Should defendants decline to testify, neither will

---

[12] Defendant Bravo provides a litany of prior statements made by
De Castro-Font at grand jury proceedings.    De Castro-Font's
statements, according to defendant Bravo, contain statements made
by defendant Martinez that are "powerfully incriminating" to
defendant Bravo.  (Docket No. 729 at p. 6.)  The statements made
by De Castro-Font include references that: (1) defendant Martinez,
defendant Bravo, and De Castro-Font discussed defendant Bravo's
legislative hearing testimony and strategy to earn support for the
bill in the media and around Puerto Rico, (2) before going to Las
Vegas, defendant Bravo, De Castro-Font and defendant Martinez met
on various occasions to talk about the legislative project for
which defendant Bravo needed help, and (3) that defendant Martinez
told De Castro-Font that defendant Bravo wanted De Castro-Font to
destroy the receipts defendant Martinez had from the Las Vegas
trip.  (Docket No. 729 at pp. 6-7.)

[13] Defendant Martinez identifies statements made by De Castro-Font
before the grand jury and at his sentencing that contain allegedly
inculpatory statements made by defendant Bravo.  (Docket No. 731
at p. 15.)  Examples of inculpatory statements made by defendant
Bravo as disclosed by De Castro-Font include:  (1) defendant Bravo
told De Castro-Font that defendant Bravo "will take care of
[defendant Martinez] too.    I will pay for everything,"
(2) defendant Bravo told De Castro-Font to destroy the boarding
pass and receipts because defendant Bravo "didn't want no [sic]
trace that could follow him of that experience," and (3) defendant
Bravo told De Castro-Font "in order that they can't trace us, you
pay for Hector Martinez's room and yours, and I'll reimburse you
later."  (Docket No. 731 at p. 17.)

have an opportunity to cross-examine the other co-defendant regarding statements each allegedly made to De Castro-Font.

The Court cannot rule based on conjecture and speculation. Too many contingencies exist regarding potential <u>Bruton</u> issues that may, or may not, materialize at trial. Accordingly, the Court is in no position to make a final ruling regarding the propriety of severance. Nonetheless, the Court is mindful that pursuant to Federal Rule of Criminal Procedure 14(b), it may order an attorney for the government to deliver to the court for *in camera* inspection any defendant's statement that the government intends to use as evidence. Neither defendant Martinez nor defendant Bravo raised the possibility of an *in camera* review by the Court pursuant to Rule 14(b). The Court, however, cannot rule in a vacuum and must know which, if any, statements of defendants the government intends to elicit at trial through De Castro-Font. Defendants' <u>Bruton</u> arguments may be moot if the government declines to call De Castro-Font to testify. Accordingly, the Court **ORDERS** the government to disclose by April 17, 2017 for an *in camera* review any statement by the defendants which the government intends to introduce into evidence at trial. The Court's ruling regarding the <u>Bruton</u> aspect of defendants' severance motions shall be held in abeyance pending the government's compliance with the Court's order.

## III. Conclusion

For the foregoing reasons, defendant Bravo's motion for severance, Docket No. 729, and defendant Martinez's motion for severance, Docket No. 731, are **DENIED** without prejudice. The Court **ORDERS** the government to disclose to the Court for an *in camera* review **by April 17, 2017** any statement made by the defendants that the government intends to introduce into evidence at trial.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 10, 2017.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE