**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **Criminal No.** 10-232 (FAB) |
| JUAN BRAVO-FERNANDEZ [1], HECTOR MARTINEZ-MALDONADO [2], | |
| **Defendants.** | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Juan Bravo-Fernandez's ("Bravo") and defendant Hector Martinez-Maldonado's ("Martinez") joint post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). (Docket No. 971.) For the reasons set forth below, the Rule 29 motion is **DENIED**.

**I. BACKGROUND**

Because the parties are familiar with the facts of this case, the Court will not repeat them here except where necessary. A general description of the trial proceedings will suffice. See United States v. Stierhoff, 549 F.3d 19, 21 (1st Cir. 2008). The Court conveys the facts throughout this opinion in the light most favorable to the jury's verdict. United States v. Rodriguez-Marrero, 390 F.3d 1, 6 (1st Cir. 2004).

On June 22, 2010, a federal grand jury returned an indictment charging defendants Bravo and Martinez with, among other criminal offenses, federal program bribery in violation of 18 U.S.C. § 666(a)(2) and 18 U.S.C. § 666(a)(1)(B) ("section 666"), respectively. (Docket No. 1.) Following a two-week trial, the jury convicted defendants Bravo and Martinez of violating section 666 on March 7, 2011.[1] See Docket No. 438. The First Circuit Court of Appeals ultimately vacated the convictions of defendants Bravo and Martinez for violating section 666, and remanded the case for further proceedings.[2] United States v. Fernandez, 722 F. 3d 1, 39 (1st Cir. 2013). The First Circuit Court of Appeals held that the Court's 2010 jury instructions were erroneous because they permitted the jury to convict pursuant to a gratuity theory, stating that "[t]he government may not pursue a conviction on that ground [i.e., a gratuity theory] if Defendants are retried." Id. at p. 28. The First Circuit Court of Appeals reasoned that

---

[1] The jury also convicted defendants of conspiracy as charged in count one, and defendant Bravo of interstate travel in aid of racketeering, as charged in count two. See Docket No. 438. The Court granted defendant Bravo's motion for acquittal regarding the travel act conviction set forth in count two. United States v. Bravo-Fernandez, 828 F. Supp. 2d 441, 449 (D.P.R. 2011) (Besosa, J.). The jury acquitted defendant Martinez of the charges alleged in counts three and six of the indictment—interstate travel in aid of racketeering and obstruction of justice, respectively. Id. The First Circuit Court of Appeals reversed defendant Bravo's conspiracy conviction. United States v. Fernandez, 722 F.3d 1, 39 (1st Cir. 2013).

[2] On remand, only the section 666 offenses alleged in counts four and five were at issue.

defendants cannot be convicted pursuant to a gratuity theory because "the true target of § 666 are bribes, not gratuities." Id. at 26.

The government retried defendants Martinez and Bravo for federal program bribery in a second trial that took place between May 2, 2017 and May 31, 2017. In charging the jury, the Court omitted language that would allow a jury to find defendants guilty pursuant to a gratuity theory, and specifically instructed the jury on what the government must prove to establish the existence of a bribery. See United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 405 (1999) (distinguishing a *quid pro quo* bribe from an illegal gratuity); United States v. Mariano, 983 F.2d 1150, 1159 (1st Cir. 1993) ("The essential difference between a bribe and an illegal gratuity is the intention of the bribe giver to effect a *quid pro quo*."). By way of example, the Court instructed the jury that:

> **Bribery requires that the government prove beyond a reasonable doubt the existence of a *quid pro quo***, in plain English, an agreement that the thing of value that is given to the public official is in exchange for that public official promising to perform official acts for the giver**. It is not sufficient that the thing of value is made to curry favor because of the official's position, cultivate a friendship or express gratitude**, or that there is some connection in time or place with an official act that is promised to the giver; rather there must be an agreement that the thing of value was offered by defendant Bravo and accepted by Senator Martinez in exchange for a promise to perform an official act.

(Docket No. 960 at p. 30) (emphasis added). Notably absent from the Rule 29 motion are challenges to the jury instructions during defendants' second trial. Indeed, defendants revisit the gratuity/bribery dichotomy only with regard to the sufficiency of the evidence, not the jury instructions.

On May 31, 2017, for a second time, a jury found defendant Bravo and defendant Martinez guilty of committing federal program bribery. (Docket Nos. 963 and 964.) Defendants move this Court to "enter a judgement of acquittal of [the section 666 offenses] for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Rule 29 motion sets forth two principal arguments: (1) the government generally failed to prove defendants guilty beyond a reasonable doubt because no rational jury could conclude that defendant Martinez and defendant Bravo entered into a *quid pro quo* agreement, and (2) the government failed to establish the jurisdictional elements required by section 666. (Docket No. 971 at p. 2.) The government opposed defendants' Rule 29 motion, and defendants replied.[3] (Docket Nos. 978 & 980.)

---

[3] A defendant may move for judgment of acquittal within fourteen days after a guilty verdict or after the discharge of the jury, whichever is later. Fed. R. Crim. P. 29(c)(1). In this case, the jury reached a verdict on May 31, 2017. (Docket Nos. 963 & 964.) The Court granted defendants' motion for an extension of time regarding post-trial motions, allowing defendants until July 7, 2017 to submit the Rule 29 motion. (Docket No. 970.) Defendants moved for a judgment of acquittal on July 7, 2017. (Docket No. 971.) Accordingly, defendants' Rule 29 motion is timely.

## II.  RULE 29 LEGAL STANDARD

A court may set aside the jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  See Fed. R. Crim. P. 29. In reviewing a motion for judgment of acquittal, courts must consider the evidence "in the light most favorable to the prosecution" and determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt."  United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted).  Rule 29 motions require courts to "take into account all evidence, both direct and circumstantial, and [to] resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict."  Valerio, 676 F.3d at 244; accord United States v. Savarese, 686 F.3d 1, 8 (1st Cir. 2012).  In other words, while the sufficiency of the evidence is at the heart of the Rule 29 inquiry, deference to the jury's verdict informs the Court's analysis.

The Court need only satisfy itself that the guilty verdict "finds support in a plausible rendition of the record."  See, e.g., United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012).  Against this backdrop, the First Circuit Court of Appeals has called the sufficiency of evidence challenge "a tough sell," United States v.

<u>Polanco</u>, 634 F.3d 39, 45 (1st Cir. 2011), observing that defendants seeking acquittal on this basis "face an uphill battle," <u>United States v. Perez-Melendez</u>, 599 F.3d 31, 40 (1st Cir. 2010); <u>accord United States v. Hatch</u>, 434 F.3d 1, 4 (1st Cir. 2006) ("These are daunting hurdles.") (internal quotation marks omitted).

**III. DISCUSSION**

    **A.   Sufficiency of the Evidence**

Defendant Martinez and defendant Bravo argue that the government failed to prove beyond a reasonable doubt that they violated section 666. According to defendants, no rational juror could find that defendant Bravo and defendant Martinez entered into an illicit *quid pro quo* agreement; namely, that defendant Bravo provided a trip to Las Vegas in exchange for influencing defendant Martinez's official acts regarding senate projects 410 and 471.[4] (Docket No. 971 at p. 12.) The Court disagrees.

Defendant Martinez and defendant Bravo attack the sufficiency of the evidence by emphasizing facts adduced at trial that favor the defense. In so doing, defendants overlook evidence supporting the jury's verdict. In ruling on the merits of defendants' Rule 29 motion, the Court must consider "**all the**

---

[4] Senate project 410 concerned a code of conduct for shopping centers. Senate project 471 set forth regulations for the private security industry in Puerto Rico.

**evidence**, direct and circumstantial," in determining whether a judgment of acquittal is warranted. <u>United States v. Peake</u>, 143 F.Supp. 3d 1, 6 (D.P.R. 2019) (Dominguez, J.) (emphasis added).

Defendants assert broadly that the government failed to prove the following: when defendant Bravo offered the Las Vegas trip to defendant Martinez, that the defendants were motivated by a corrupt intent, and the existence of a *quid pro quo* agreement between defendant Bravo and Jorge De Castro-Font (De Castro-Font).[5] (Docket No. 971 at pp. 17 and 23.) Defendants provide specific examples in an attempt to substantiate these assertions. For instance, defendant Martinez's former adviser, Victor Rivera ("Rivera"), testified that: (1) defendant Martinez supported senate projects 410 and 471 before the Las Vegas trip, (2) he observed defendant Martinez meet with defendant Bravo and others to discuss the Las Vegas trip, but did not hear defendant Martinez confirm his attendance at the boxing match, and (3) defendant Martinez had no reaction after Rivera recommended that he forego the Las Vegas trip. <u>Id.</u> at pp. 17 and 18. Additionally, Carlos Diaz ("Diaz"), De Castro-Font's former assistant, testified that

---

[5] Jorge De Castro-Font is a former senator of the Puerto Rico Legislature. On October 2, 2008, a grand jury returned an indictment charging De Castro-Font with, *inter alia*, federal program bribery in violation of section 666. (Case No. 08-337, Docket No. 3.) De Castro-Font ultimately pled guilty to wire fraud and interference with commerce by threats or violence in violation of 18 U.S.C. sections 1343, 1346 and 1951. (Case No. 08-337, Docket 174.) The Court sentenced De Castro-Font to 60 months of imprisonment. (Case No. 08-337, Docket No. 353.)

he received tickets for the flight to Las Vegas on behalf of De
Castro-Font from Tato Lebron, not from defendant Bravo personally.
Id. at p. 19.

Although defendants cited evidence that tends to
undermine the verdict, their rendition of the trial record is
incomplete. By way of example, the government elicited testimony
to establish that: (1) defendant Martinez served as Chairman of
the Public Safety Committee, instilling in him the authority to
schedule legislative hearings and to determine who testified
before the committee, (2) defendants Bravo and Martinez were not
friends prior to defendant Martinez's election to the Puerto Rico
Legislature, (3) defendant Bravo contributed to various political
candidates, but not to defendant Martinez's campaign,
(4) defendant Bravo delivered a draft bill of senate project 410
to defendant Martinez near the end of February 2005, (5) on
March 2, 2005, defendant Martinez submitted senate project 410 to
the Senate for deliberation, (6) also on March 2, 2005, defendant
Bravo purchased four $1,000 tickets to the Felix "Tito"
Trinidad/Winky Wright boxing match in Las Vegas, (7) defendant
Bravo called defendant Martinez and De Castro-Font on March 2,
2005, (8) at a Public Safety Committee hearing on April 12, 2005
regarding senate project 471, defendant Bravo's security firm,
Ranger American, was the only private security firm invited to

testify, and (9) that defendant Bravo, defendant Martinez, and De Castro-Font did, in fact, travel to Las Vegas together.  (Docket No. 985 at pp. 17-74; Docket No. 984 at pp. 166-167, 180; Docket No. 987 at pp. 178-180.)[6]

Indeed, the trial record is replete with evidence allowing a reasonable jury to find defendants guilty beyond a reasonable doubt of committing federal program bribery. Defendants' trip to Las Vegas and the legislative actions taken by defendant Martinez and De Castro-Font in furtherance of enacting senate projects 410 and 471 occurred within days of one another, providing the jury with circumstantial evidence that the defendants committed federal program bribery.[7]  See United States v. Agostini, 123 F.3d 1138, 11983 (7th Cir. 1997) ("A reasonable jury could have found that this timing [between officials acts and payment of the bribe] provided circumstantial evidence that Agostini offered Goetz the money with the requisite corrupt intent

---

[6] In the Rule 29 motion defendants Martinez and Bravo "raise and preserve for review the claim that [the] evidence should not be deemed sufficient for purpose of the record."  (Docket No. 971 at p. 45.)  The Court, nonetheless, must consider "the body of proof, as a whole," resolving all evidentiary and credibility questions in favor of the government.  See United States v. Manso-Cepeda, Case No. 14-082, 25 F. Supp. 3d 196, 200 (D.P.R. 2014) (Besosa, J.) (citation omitted).

[7] In Fernandez, the First Circuit Court of Appeals distinguished that section 666 requires an "agreement to exchange [a thing of value] for official action." 722 F.3d at 19.  Circumstantial evidence of a *quid pro quo* agreement, thus, may be of significant relevance because bribery "agreements [frequently] will be oral and informal," requiring the jury to infer "what the participants say, mean and do."  United States v. McDonough, 727 F.3d, 143, 153 (1st Cir. 2013).

to establish a violation of § 666(a)(2)."). To illustrate, the Public Safety Committee voted on senate projects 410 and 471 on May 12, 2005, the same day defendant Martinez and De Castro-Font voted to transfer this legislation out of committee. (Docket No. 986 at p. 139.) The next day, defendant Bravo, defendant Martinez, and de Castro-Font traveled to Las Vegas. Id. The day after defendants returned to Puerto Rico, defendant Martinez and De Castro-Font voted to enact senate project 471. Id. A week after attending the boxing match, defendant Martinez and De Castro-Font voted in favor of senate project 410. (Docket No. 985 at p. 70.) The Court need not itemize every exhibit or piece of evidence presented at trial to conclude that overwhelming evidence supports the verdict.

In addition to presenting an incomplete account of the evidence presented at trial, the Rule 29 motion is fraught with inferences made in the light most favorable to the defense, not the government. The Court will provide two illustrative examples.

First, defendants argue that Rivera's testimony regarding a conversation he had with defendant Martinez undermines the notion that there was a *quid pro quo* agreement between defendants Martinez and Bravo. (Docket No. 971 at p. 18.) At trial, Rivera claimed that he suggested to defendant Martinez that he not accompany defendant Bravo to Las Vegas because doing so

would be inappropriate.[8]  Id.  According to Rivera, defendant

Martinez had no reaction.  Id.  The government claimed that

defendant Martinez's failure to react was an attempt to avoid

discussing the Las Vegas trip with his mentor.  Id. Defendants

instead argue that this "is not a reasonable inference," and that

"there is only one logical explanation for [defendant Martinez's]

lack of reaction to his friend and adviser—[defendant Martinez]

had *not* yet been invited to join the trip."  Id.  The Court

disagrees.  The totality of the evidence presented at trial is

consistent with an alternative inference:  that defendant Martinez

avoided discussing the trip with Rivera because he was embarrassed,

choosing to remain silent rather than disappoint a person he

considered to be a father-like figure.

     Second, defendants further attempt to undermine the

government's evidence of a *quid pro quo* by arguing that the only

logical inference is that the hotel rooms defendant Bravo reserved

in Las Vegas "were for himself, and not for anyone else." (Docket

No. 971 at p. 20.)  Defendants further argue that "even assuming

it was logical to infer that one of the April 1 reservations was

for someone other than [defendant Bravo], there is no evidence

---

[8] At trial, Rivera testified that he warned defendant Martinez that "it was not
appropriate, that it was not right to be going on a trip with a person who had
two bills submitted before the Committee." (Docket No. 985 at p. 60.)

indicating for whom they were made." <u>Id.</u> Defendants then go on to suggest that the fact that defendants spoke on the phone on March 2, 2005, the date the Las Vegas hotel rooms were reserved, is a "mere coincidence" that "is itself insufficient to establish that [defendant Martinez] was even aware of the trip or the tickets on March 2." (Docket No. 971 at p. 21.)

Defendants cannot prevail on their Rule 29 motion by interpreting isolated facts adduced at trial in a manner that undermines both the verdict and the government's theory of the case. On a Rule 29 motion, courts examine whether "the evidence is insufficient to sustain a conviction," not whether any one particular fact, standing alone, is sufficient to prove a defendant's guilt beyond a reasonable doubt. Fed. R. Crim. P. 29(a). That some of the evidence presented at trial may be subject to an interpretation that is inconsistent with a finding of guilt beyond a reasonable doubt is no reason for the Court to disturb the jury's verdict. This is so because the government need not "[e]liminate every possible theory consistent with the defendant's innocence." <u>United States v. Perez-Melendez</u>, 599 F.3d 31, 40 (1st Cir. 2010) (citation omitted); see also <u>United States v. Abreu</u>, 952 F.2d 1458, 1468 (1st Cir. 1992) ("It is the province of the jury to decide to appropriate weight to give specific evidence.").

Resolving "all evidentiary disputes and credibility questions in favor of the government" and "drawing all reasonable inferences in favor of the government's case," United States v Cedeño-Mariano, 971 F. Supp. 2d 225, 230 (D.P.R. 2013) (Besosa, J.), compels the Court to conclude that there was ample evidence presented at trial to sustain the jury's verdict. That is, the jury could reasonably infer that defendant Bravo, defendant Martinez, and De Castro-Font traveled to Las Vegas at defendant Bravo's expense. Similarly, the jury could also reasonably infer that defendants entered into *quid pro quo* agreement on March 2, 2005, the date in which defendants spoke on the phone, and the date defendant Bravo purchased tickets for the boxing match.

**B.    Previous and Contemporaneous Support of Senate Projects 410 and 471**

Defendants Martinez and Bravo move for a judgment of acquittal because "case law establishes that the defendants must intend that the thing of value induce the public official to alter his official act or take an official act he would not otherwise take." Docket No. 971 at p. 16 (citing United States v. Sawyer, 85 F.3d 713, 730 (1st Cir. 1996) (vacating conviction premised on state law allowing jury to "convict for a gratuity offense," in addition to a bribery offense)). Defendants argue that "the government must convince the jury that the offer and acceptance occurred before [defendant Martinez] made the decision to support

projects 410 and 471." (Docket No. 971 at p. 22.) Defendants
misstate the law.

Section 666 prohibits public officials from accepting
things of value "intending to be influenced or rewarded in
connection with any business." 18 U.S.C. § 666(a)(1)(B). At
trial, the parties disputed whether a *quid pro quo* agreement
existed, and if so, when defendants agreed to exchange a trip to
Las Vegas for legislative support.

The timing of the agreement is paramount in a prosecution
for bribery, particularly with regard to the "rewarded" language
in section 666. The First Circuit Court of Appeals explained that
"rewarded" in section 666 does not "create a separate gratuity
offense." Fernandez, 722 F.3d at 23. Rather, the "rewarded"
language simply clarifies that "a bribe can be promised before,
but paid after, the official's action on the payor's behalf," also
known as a forward-looking bribe. Id. Defendants are correct in
stating that "[w]hat matters is not necessarily the timing of the
payment, but the timing of the agreement to make or receive the
payment." (Docket No. 971 at p. 16, (citing Fernandez, 722 F.3d
at 10.)) The government argued, and the jury found, that
defendants exchanged a trip to Las Vegas in return for legislative
support, and that this exchange influenced defendant Martinez's

official actions.  The government was under no obligation to prove

the precise date that the defendants agreed to the bribe.

Defendants, however, seek to impose an additional

requirement on the government:  that the conviction cannot stand

if defendant Martinez supported senate projects 410 and 471 before

entering into a *quid pro quo* agreement with defendant Bravo.

Essentially, defendants argue that the government cannot prove

bribery in this case because the purported *quo* — defendant

Martinez's support for senate projects 410 and 471 — already

existed when defendant Bravo offered the *quid* – a trip to Las

Vegas.

Precedent and the statutory language defeat defendants'

argument.  Absent from section 666 is a requirement that the public

official change course, or that the public official adopt

legislation that he or she would not otherwise support.  Rather,

section 666 forbids public officials from accepting bribes

"intending to be influenced," not "intending to deviate from

previous plans."  18 U.S.C. § 666(a)(1)(B).  The "intent to be

influenced" is the *quo*.

Defendants' argument is further defeated by relevant

precedent.  In <u>United States v. Jannotti</u>, the Third Circuit Court

of Appeals dismissed the very same argument defendants make in

this case.  673 F.2d 578 (3rd Cir. 1982).  Defendants in <u>Jannotti</u>

denied wrongdoing because their actions in furtherance of a construction project were legitimate and benefited the public. Id. at 601. The Court rejected this argument, stating that defendants "fail to negate the permissible inference that both men knew they were acting improperly in accepting money in return for their support and influence." Id. It is no defense against bribery that "had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make." Id. (internal quotation marks and citation omitted); id. ("[S]ociety deals sternly with bribery which would substitute the will of an interested person for the judgment of a public official as the controlling factor in official decisions.") (citation omitted).

Similarly, in United States v. Bryant, defendants asserted that "without a specific allegation that [the public official] took actions he otherwise could not have taken, the Indictment does not allege that [the public official] was influenced by the bargain he struck with [the briber], and despite the Indictment's use of the word 'exchange,' [the public official] exchanged nothing." 556 F. Supp. 2d 378, 390 (D.N.J. 2008). The Bryant court rejected this rational, noting that "exchange" as set forth in section 666 refers to the exchange of a bribe in return for influence. Id. A public official, such as defendant Martinez,

can "have the intent to be influenced by a bribe, *i.e.*, the intent to make good on the bargain," even though the public official "ends up taking the same action he would likely have taken if he were not bribed." Id. (internal citation omitted); see also United States v. Ford, 435 F.3d 204, 213 (2d Cir. 2006) ("The recipient's 'awareness' that the donor gave something of value for the purpose of influencing the recipient might well constitute strong circumstantial evidence that the recipient acted with the requisite culpable state of mind in accepting the item, but a jury should be clearly instructed that it is the recipient's intent to make good on the bargain, not simply her awareness of the donor's intent that is essential to establishing guilt under [the bribery prong of] Section 666").).

In this case, the jury's guilty verdict is no way undermined by the fact that defendant Martinez may have supported senate projects 410 and 471 because they were "good bills" prior to the Las Vegas trip. (Docket No. 996 at p. 105.) A jury could reasonably find that defendant Martinez supported the legislation for legitimate reasons while simultaneously concluding that he impermissibly intended to be influenced by the trip to Las Vegas. Accordingly, the Court cannot set aside the jury's verdict because

defendant Martinez may have supported senate projects 410 and 471

before the Las Vegas trip.[9]

## C.  Jurisdictional Elements of Section 666

Defendants contest the verdict because, they argue, the

government failed to establish that defendant Martinez and De

Castro-Font were agents of a Puerto Rico entity that received more

than $10,000 in federal funds.   (Docket No. 971 at p. 34.)

Section 666 applies to agents of an "organization, government, or

agency [that] receives, in any one year period, benefits in excess

of $10,000 under a Federal program."   18 U.S.C. § 666(b).   In

Fernandez, the First Circuit Court of Appeals held that evidence

establishing that "the Commonwealth received over $4.7 billion in

federal funds [. . .] was sufficient to show that [defendant

Martinez and De Castro Font] are agents of a 'government . . .

[that] receives, in any one year period, benefits in excess of

---

[9] In keeping with precedent and the statutory language, the Court instructed the jury that: the thing of value need not have been solicited, demanded, or accepted solely with a corrupt intent to influence or reward because people rarely act for a single purpose.  To find that the thing of value was solicited, demanded, or accepted with a corrupt intent to influence or reward, you must find that defendant Martinez solicited, demanded, accepted, or agreed to accept the think of value in part to corruptly influence or reward his official acts [. . .] **The government is not required to prove that defendant Martinez's solicitation, demand, acceptance, or agreement to accept the trip to Las Vegas caused defendant Martinez to change his actions or course of conduct regarding senate project 410 and/or 471."**  (Docket No. 960 at pp. 27 & 29) (emphasis added).   Defendants' repeated assertions that "[t]o prove bribery, the government had to prove [defendant Martinez] supported Projects 410 and 471 in exchange for having been offered a bribe—not because he believed the legislation was beneficial for Puerto Rico" are meritless in the context of the Rule 29 motion.

$10,000 under a Federal program.'" 722 F.3d at 9 (citing 18 U.S.C.

§ 666(b)). At trial, the parties consented to the following

stipulation, which the Court read to the jury:

> The parties hereby stipulate that in fiscal year 2005
> the Commonwealth of Puerto Rico received more than
> $10,000 in federal funding. Specifically, from October
> 1, 2004, to September 30, 2005, the Commonwealth of
> Puerto Rico received over $4.7 billion in federal funds.

(Docket No. 932.) The stipulation read to the jury incorporating

language identical to the language reviewed by the Fernandez court

satisfies the federal benefits element pursuant to section 666.

Defendant Martinez and defendant Bravo also contend that

the evidence presented at trial was insufficient to establish the

"business" or "transaction" element of section 666. (Docket

No. 971 at p. 40.) Pursuant to section 666, bribery must be "in

connection with any business, transaction, or series of

transactions of such organizations, government or agency involving

anything of value of $5,000 or more." 18 U.S.C. §§ 666(a)(1)(B),

666(b). According to defendants, acquittal is required because

senate projects 410 and 471 "did not concern any grants, contracts,

money, or property — did not constitute or conduct business or

financial transactions."[10]  Id.  Once more, the Fernandez decision

is dispositive.  The First Circuit Court of Appeals specifically

rejected this narrow interpretation of the "business or

transaction" requirement because doing so "would foreclose large

swaths of government activity that, though technically 'non-

commercial,' could be profitable for unscrupulous individuals to

attempt to influence."  722 F.3d at 14 (citing Salinas v. United

States, 522 U.S. 52, 56 (1997)).  Senate projects 410 and 471,

including the hearings, votes, research and other official acts

associated with this legislation, fulfill the "business or

transaction" element pursuant to section 666.

Defendants' final argument that senate projects 410 and

471 do not satisfy the $5,000 requirement, like the other

jurisdictional arguments, is unconvincing.  Section 666 requires

that the business or transaction exchanged for the bribe "involve

anything of value of $5,000 or more."  18 U.S.C. §§ 666(a)(1)(B),

666(b).  The government presented evidence at trial establishing

that senate project 471 would cripple defendant Bravo's

competitors in the private security industry, providing defendant

---

[10] Defendants made the same argument in 2010.  See Docket No. 58 at p. 9 (arguing
that prosecution pursuant to section 666 is improper because "the Senate passes
legislation, it creates law; there is no sort of negotiated financial exchange
with any other party.") This Court rejected defendants' argument, noting that
"the Supreme Court, in analyzing a claim under 666, has advised courts to
refrain from imposing a 'narrowing construction' of the business or transaction
clause."  United States v. Bravo-Fernandez, 828 F. Supp. 2d 441, 454 (D.P.R.
2011) (Besosa, J.).

Bravo access to an additional $1.5 million in profits.  (Docket

No. 989 at p. 19.)  This calculation, defendants argue, is too

speculative.  (Docket No. 971 at p. 45.)  Defendants, however,

acknowledge that the First Circuit of Appeals addressed this issue

in Fernandez, holding that evidence presented in a section 666

prosecution is "sufficient if the direct and foreseeable effect of

that legislation would be to give the individual offering the bribe

a particular result."  722 F.3d at 15.  The government "presented

evidence that the foreseeable effect of Senate Project 471 would

be a change in the armored car service industry, which in turn

would result in financial benefits to Ranger American and

[defendant Bravo] far exceeding $5,000."  Id.  Consequently, the

evidence presented at trial is sufficient for a jury to find that

senate projects 410 and 471 met the $5,000 threshold set forth in

section 666.

**IV.  CONCLUSION**

Based on the foregoing analysis, the Court **DENIES** the Rule 29

motion for judgment of acquittal.  (Docket No. 971.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 1, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE