## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff**,

             v.                          **Criminal No.** 10-232 (FAB)

JUAN BRAVO-FERNÁNDEZ [1],
HÉCTOR MARTÍNEZ-MALDONADO [2],

    **Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

Defendant Juan Bravo-Fernández ("Bravo") and defendant Héctor Martínez-Maldonado ("Martínez") have jointly filed a motion for bail pending appeal pursuant to the Bail Reform Act, 18 U.S.C. § 3143(b) ("section 3143"), and Federal Rule of Criminal Procedure 46(c) ("Rule 46"). (Docket No. 1026.) For the reasons set forth below, Bravo's and Martínez's joint motion for bail pending appeal is **GRANTED**.

## I.   Background

On June 22, 2010, a federal grand jury returned an indictment charging Bravo and Martínez with, among other criminal offenses, federal program bribery in violation of 18 U.S.C. § 666(a)(2) and 18 U.S.C. § 666(a)(1)(B) ("section 666"), respectively. (Docket No. 1.) Following a two-week trial, the jury convicted Bravo and

Martínez of violating section 666.  <u>See</u> Docket No. 438.[1]  The First Circuit Court of Appeals ultimately vacated the convictions of Bravo and Martínez for committing federal program bribery, and remanded the case for further proceedings.  <u>United States v. Fernández</u>, 722 F. 3d 1, 39 (1st Cir. 2013).[2]

The United States retried Bravo and Martínez for federal program bribery in a second trial that occurred between May 2, 2017 and May 31, 2017.  For a second time, a jury convicted Bravo and Martínez of violating section 666.  (Docket Nos. 963 and 964.) At sentencing, this Court imposed a 48-month term of imprisonment on both Bravo and Martínez.  (Docket Nos. 1028 and 1030.)  The Court permitted Bravo and Martínez to surrender voluntarily to the correctional institutions where they would be designated.  <u>Id.</u> The defendants request bail pending appeal.  (Docket No. 1026.) The United States opposed Bravo's and Martínez's motion, and the defendants replied.  (Docket Nos. 1055 and 1056.)

---

[1] The jury also convicted defendants of conspiracy as charged in count one, and defendant Bravo of interstate travel in aid of racketeering, as charged in count two.  <u>See</u> Docket No. 438.  The Court granted Bravo's motion for acquittal regarding the travel act conviction set forth in count two.  <u>United States v. Bravo-Fernández</u>, 828 F. Supp. 2d 441, 449 (D.P.R. 2011) (Besosa, J.).  The jury acquitted Martínez of the charges alleged in counts three and six of the indictment—interstate travel in aid of racketeering and obstruction of justice, respectively.  <u>Id.</u>  The First Circuit Court of Appeals reversed Bravo's conspiracy conviction.  <u>United States v. Fernández</u>, 722 F.3d 1, 39 (1st Cir. 2013).

[2] On remand, only the section 666 offenses alleged in counts four and five were at issue.

**II.  Section 3143 of the Bail Reform Act**

"The provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal."  Fed. R. Crim. P. 46(c).  Pursuant to section 3143, "it is presumed that an individual convicted of an offense and sentenced to a term of imprisonment ("defendant") will be detained pending appeal."  United States v. Vázquez-Botet, No. 04-160, 2007 U.S. Dist. LEXIS 7084 *4 (D.P.R. Jan. 30, 2007) (Fusté, J.) (citing United States v. Colón-Muñoz, 292 F.3d 18, 20 (1st Cir. 2002)).  A defendant requesting bail pending appeal must establish by clear and convincing evidence that:  (1) he or she is "not likely to flee or pose a danger to the safety of any other person or the community if released," and (2) that his or her "appeal is not for the purpose of delay and raises a substantial question of law or fact."  18 U.S.C. § 3143(b)(1).  Bravo and Martínez shoulder the burden of satisfying both requirements.  United States v. Colón-Berríos, 791 F.2d 211, 214 n.4 (1st Cir. 1986) ("In enacting § 3143, Congress placed the burden as to *all* elements bearing on whether to grant bail pending appeal on defendants.").

**A.  Risk of Flight or Danger to the Community**

Bravo and Martínez satisfy the first requirement because they do not pose a risk of flight, and do not represent a danger to the community.  Indeed, the United States concedes that the

defendants fulfill this requirement for bail pending appeal. (Docket No. 1055 at p. 2.) The United States did not oppose Bravo's request to travel abroad after his conviction. (Docket Nos. 1057 and 1059.) Consequently, the Court finds by clear and convincing evidence that Bravo and Martínez are "not likely to flee or pose a danger to the safety" of the community. Fed. R. Crim. P. § 3143(b)(1).

**B. Purpose of Delay and Substantial Question of Law or Fact**

Bravo and Martínez must demonstrate that "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" one of four outcomes: (1) reversal, (2) "an order for a new trial," (3) "a sentence that does not include a term of imprisonment," or (4) "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." Id. Nothing in the record demonstrates that Bravo and Martínez filed appeals "for the purpose of delay." Id. The United States argues, however, that the defendants "have failed to raise a substantial question of law or fact that is likely to result in reversal or a new trail." (Docket No. 1055 at p. 2.) The Court disagrees.

To determine whether a defendant has raised a substantial question of law on appeal, courts engage in a two-

pronged analysis.  United States v. Zimny, 857 F.3d 97, 99 (1st Cir. 2017).  To fulfill the "substantiality prong," the defendants must present "a close question or one that very well could be decided the other way."  Id. at 100 (citing United States v. Bayko, 774 F.2d 516, 523 (1st Cir. 1985)).  After identifying the substantial question of law, courts consider the "likelihood prong."  Id.  Courts presume "that the substantial question of law is determined favorably to defendant on appeal."  Id. (citation and quotation omitted).  Moreover, the error cited in the defendants' appeals "must not be harmless or unprejudicial." Bayko, 774 F.2d at 523.  Bravo and Martínez satisfy both prongs.

### 1.    Martínez and Bravo Present a Substantial Question of Law Regarding the Application of Section 666

Bravo and Martínez predicate their motion for bail pending appeal on six purported errors committed at their second trial. (Docket No. 1026 at p. 6.)  The linchpin of their motion, however, concerns the sufficiency of a stipulation submitted to the jury concerning section 666.  Id. at pp. 5—15.  For liability to attach pursuant to section 666, the United States must prove beyond a reasonable doubt that the relevant:

> organization, government, or agency receives, in any one year period, **benefits** in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(b) (emphasis added).[3]  The United States and the defendants stipulated that in 2005, "the Commonwealth of Puerto Rico received more than $10,000 in federal **funding**.  Specifically, that from October 1, 2004, to September 30, 2005, the Commonwealth of Puerto Rico received over $4.7 billion in federal **funds**." (Docket No. 932) (emphasis added).  Bravo and Martínez argue that this stipulation fails to prove that Puerto Rico received more than $10,000 in federal **benefits** within the meaning of section 666.

The defendants identify a substantial question of law.  Whether a stipulation that refers to "funds" is sufficient to prove that Puerto Rico received federal "benefits" is a "close call."  See Zimny, 857 F.3d at 99.  In Fischer v. United States, the Supreme Court of the United States distinguished "funds" from "benefits" in relation to section 666.  529 U.S. 667 (2000).  The Fisher court held that "Medicare payments are 'benefits,' as the term is used in its ordinary sense and as it is intended in [section 666]."  Id. at 677.  The Supreme Court cautioned that its decision in Fisher "should not be taken to suggest that federal funds disbursed under an assistance program will result in coverage of all recipient fraud under § 666(b)."  Id. at 681.  Bravo and

---

[3] The indictment alleged that at all times relevant "defendant MARTINEZ and de Castro Font were agents of the Commonwealth of Puerto Rico whose duties included those of an elected Senator of the Commonwealth of Puerto Rico." (Docket No. 1 at p. 22.)

Martínez cite _Fisher_ for the proposition that "[a]ny receipt of federal funds can, at some level of generality, be characterized as a benefit." (Docket No. 1026 at p. 6) (quoting _Fisher_, 529 U.S. at 681). To premise section 666 liability on assistance from the federal government without first determining whether that assistance constitutes a benefit "would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance." _Fischer_, 529 U.S. at 681. Because the terms "funds" and "benefits" are not synonymous with each other, a substantial question of law exists regarding the sufficiency of the parties' joint stipulation to satisfy an essential element of the offense.

In _United States v. Dubón-Otero_, the First Circuit Court of Appeals reviewed the trial court's denial of the defendants' joint motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. 292 F.3d 1 (1st Cir. 2002). Prior to their convictions for violating section 666, the defendants worked at Advanced Community Health Services ("Health Services"), a non-profit organization that contracted with the Municipality of San Juan to provide AIDS counseling and other health care services. _Id._ at 4. The defendants violated section 666 because they diverted funds from Health Services. _Id._ On appeal, the defendants argued that the United States failed to prove that

Health Services received federal benefits.  Id. at 6.  After
reviewing evidence that Health Services received payments from
federal agencies to test members of the public for AIDS and to
provide counseling services, the First Circuit Court of Appeals
held that "the jury supportably could have" found that the payments
"Heath Services received constituted benefits."  Id. at 8.  The
Dubón-Otero court cited Fisher, stating that:

> To determine whether an organization participating in
> federal assistance program receives "benefits," an
> examination must be undertaken of the program's
> structure, operation, and purpose.  The inquiry should
> examine the condition under which the organization
> receives the federal benefits.  The answer could depend,
> as it does here, on whether the recipient's own
> operations are one of the reasons for maintaining the
> program.

Id. (citing Fisher, 529 U.S. at 681).  The First Circuit Court of
Appeals' analysis in Dubón-Otero further underscores that
distinguishing "funds" from "benefits" is imperative because
criminal culpability attaches only to the latter.

            The United States contends that the First Circuit
Court of Appeals' decision in United States v. Fernández, 722
F.3d 1 (1st Cir. 2013), forecloses the defendants' argument that
the stipulation concerning federal funds is deficient.  (Docket
No. 1055 at p. 2.)  Fernández, however, is inapposite.  722 F.3d 1.
Following the defendants' conviction in 2011, the First Circuit
Court of Appeals addressed the sufficiency of the evidence from

the first trial. _Id._ The evidence before the jury in 2011 "was sufficient to show that [Bravo and Martínez] are agents of a 'government . . . [that] receives, in any one year period, benefits in excess of $10,000 under a Federal program.'" _Id._ at 1 (citing 18 U.S.C. § 666(b)). The United States misconstrues the record by stating that it "presented identical evidence during the 2011 trial." (Docket No. 1055 at p. 3.) During the 2011 trial, an employee of the Treasury Department of Puerto Rico testified that between 2005 and 2006 the Senate of Puerto Rico's childcare program received $20,000 from the federal government. (Docket No. 391 at pp. 24—25.) The United States did not call this witness to testify at the 2017 trial, relying solely on the stipulation referring to federal "funds."[4] Accordingly, the First Circuit Court of Appeals' decision in _Fernández_ has no bearing on whether the stipulation submitted to the jury is sufficient to sustain the defendants' section 666 convictions. _Dubón-Otero_, however, may be sufficient.

---

[4] In its closing argument, the United States informed the jury that:

> [Y]ou need to find beyond a reasonable doubt that Puerto Rico received at least $10,000 in federal benefits in a one-year period around May 2005. Judge Besosa read you another stipulation, which I'll read to you now: "The parties hereby stipulate that in fiscal year 2005, the Commonwealth of Puerto Rico received more than $10,000 in federal funds. Specifically, from October 1, 2004 to September 30, 2005, the Commonwealth of Puerto Rico received over $4.7 billion in federal funds." $4.7 billion is a heck of a lot more than $10,000, so you can also check that one off.

(Docket No. 996 at pp. 34—35.)

### 2. A Favorable Disposition on Appeal Will Likely Result in a Reversal

To address the likelihood prong, the Court presumes "that if that substantial question is determined favorably to [Bravo and Martínez] on appeal, that decision is likely to result in reversal." Bayko, 774 F.2d at 522. The analysis underlying the likelihood prong is nuanced, and "cannot be read to mean that bail is not to be granted unless the district court is willing to say it will probably be reversed." Bayko, 774 F.2d at 522; see United States v. DiMauro, 614 F. Supp. 461, 465 (D. Me. 1985) (holding that "the probability of reversal" is not the proper standard to determine whether bail pending appeal is warranted) (citation omitted). The Court need not find that "it is likely to be reversed" because:

> A district court who, on reflection, concludes that s/he erred may rectify that error when ruling upon post-trial motions. Judges do not knowingly leave substantial errors uncorrected, or deliberately misconstrue applicable precedent. Thus, it would be capricious of Congress to have conditioned bail only on the willingness of a trial judge to certify his or her own error.

Bayko, 774 F.2d at 522. Rather, the relevant inquiry presupposes that the defendants prevail.

Should the First Circuit Court of Appeals find that the stipulation is insufficient to satisfy an essential element of section 666, the defendants' conviction cannot stand. See e.g.,

United States v. Jackson, 313 F.3d 231 (5th Cir. 2002) (vacating the defendant's section 666 conviction because the court's "extensive review of the record reveals a dearth of evidence to support the essential element that the City received more than $10,000 per year in federal funds").  The $10,000 amount is jurisdictional, and failure to satisfy this element of section 666 invalidates the defendants' convictions.  See United States v. López-Cotto, 884 F.3d 1, 7 n.3 (1st Cir. 2018) (referring to the $10,000 requirement in section 666 as "jurisdictional").  The appropriate remedy for the submission of insufficient evidence at trial is vacatur of the defendant's conviction.  See e.g., United States v. Rodríguez-Lozada, 558 F.3d 29, 42 (1st Cir. 2009) ("Because evidence of facilitation is lacking in this case, Rodríguez's conviction and sentence for violating § 924(c)(1), Count Five, are also vacated due to insufficient evidence.").

Because Bravo and Martínez have presented a substantial question of law that would result in the vacatur of their convictions if resolved in their favor, the Court concludes that the defendants have satisfied the likelihood prong.

## III. Conclusion

For the reasons set forth above, Bravo's and Martínez's joint motion for bail pending appeal is **GRANTED**.  (Docket No. 1026.) Bravo and Martínez must comply with the following standard

conditions of release, as they were required to do, when subject to pre-trial release in 2010:  Standard Conditions 1—4, 7(e), 7(h)—(k),  7(n)—7(p),  and  7(u)—(x).   (Docket  Nos.  13  and  15.)   The defendants are prohibited from associating or communicating with any witness who testified at any hearing or trial in this case.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, June 29, 2018.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE